## HENSON *v.* STATE

[No. 48, September Term, 1964.]

*Decided November 13, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Jack E. Richards* for the appellant.

*Robert C. Murphy, Deputy Attorney General,* with whom were *Thomas B. Finan, Attorney General, Carville M. Downes,*

*Assistant Attorney General, William J. O'Donnell* and *James W. McAllister, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Norman Henson, convicted of possession and control of narcotics, contends in his appeal (a) that no probable cause existed for the issuance of the search warrant used to procure incriminating evidence; (b) that the police officers who executed the search warrant broke open the door of the house being searched without first announcing who they were and making demand that entry be granted, and that this was illegal and vitiated all that followed; and (c) that there was no probable cause to arrest him.

The affidavit in support of the issuance of the search warrant recited that complaint had been made to the police that the laws relating to the possession and sale of narcotic drugs were being violated on the premises known as 1827 McCulloh Street in Baltimore and that officer Robinson (the affiant) and officer Davis (both experienced in narcotics investigations and arrests) observed the premises from 8:30 a. m. to 12 noon on November 5, 1963, and saw a named known narcotic addict enter, remain a minute and leave; saw another named addict open the door of the house and admit an unknown described male, who remained inside for a minute and then left; saw another named known addict be admitted by Walter Henson, the brother of the appellant, who was known to them as an addict; saw Henson come out and stand on the steps until a named known addict drove up in an automobile when Henson walked to the car, handed something to the man in the car, received money in return and went back in the house; saw Norman Henson, the appellant, a known addict, leave the house and shortly thereafter other addicts enter and then leave.

On six following days similar observations involving forty-three known narcotic addicts were made. On a number of occasions Norman Henson would open the door and converse briefly with known addicts (sometimes shaking his head negatively and sometimes taking the visitor into the house for a

minute or so). On one occasion a known addict took money from his pocket, gave it to his companion, also a known addict, who put it with some of his own money and rang the bell of the house (while the other man waited on the sidewalk) and Walter Henson answered the door and took the money. Soon after, the man who had rung the bell came out, walked to his companion on the sidewalk and handed him a small white object. (The testimony was that narcotics are packaged and dispensed in small white glassine bags.)

The affiant concluded the affidavit with the statement that the observed events, which were "the method of operation used by buyer and seller, in the narcotics traffic" led to the conclusion "that narcotics are being kept and sold on the premises."

Code (1964 Cum. Supp.), Art. 27, Sec. 551, provides that when it is made to appear to a judge or justice of the peace of this State that there is probable cause to believe that a crime is being committed in a building within his territorial jurisdiction, he may issue a search warrant. Probable cause, which is less than certainty or demonstration but more than suspicion or possibility, is to be determined by the judge or justice who issues the warrant, and if a prudent and cautious man would be justified from the facts presented to show its existence in believing that the offense had been or was being committed, the warrant properly may be issued. In making his determination this judicial, hypothetical, "cautious and prudent man" may give consideration to the special significance which objects, happenings and individuals may have conveyed to the trained, experienced and knowledgeable police officers who apply for the warrant. *Dean v. State,* 205 Md. 274; *Bratburd v. State,* 193 Md. 352. Judge Carter was justified in finding probable cause for the issuance of the warrant.

The claim that the evidence seized was inadmissible because the police officers executing the search warrant did not advise those within that they had such a warrant and demand admittance, but broke in forcibly without notice, is an extension of the old rule that a peace officer seeking to arrest an individual who is in a house, either by authority of an arrest warrant or under circumstances making a warrant unnecessary, must give proper notice of his purpose and authority and be

denied admittance before he can use force to break and enter. The reasons for these requirements have been said to be that the law abhors unnecessary breaking or destruction of any house, *Semayne's Case,* 5 Coke's Reports 91, 77 Eng. Rep. 194, because the dweller in the house would not know the purpose of the person breaking in, unless he were notified, and would have a right to resist seeming aggression on his private property, *Launock v. Brown,* 2 B. & Ald. Rep. 592, 106 Eng. Rep. 482. This rule of long standing has been transferred to the statute books in some twenty-five states, and in the federal law, see *Miller v. United States,* 357 U. S. 301, 309, 2 L. Ed. 2d 1332, 1338, note 8. However, the rule often has been made subject to qualifications and exceptions even in states with statutes, so that by judicial decision announcement and demand are not a requisite where the facts make it evident the officers' purpose is known or where they would frustrate the arrest, increase the peril of the arresting officer or permit the destruction of evidence. 5 Am. Jur. 2d *Arrest* Sec. 93, p. 778; Restatement *Torts* Sec. 206; Kauffman, *The Law of Arrest in Maryland,* 5 Md. L. Rev. 125, 130; *People v. Maddox* (Calif.), 294 P. 2d 6, cert. den. 352 U. S. 858, 1 L. Ed. 2d 65; *People v. Hammond* (Calif.), 357 P. 2d 289; *Commonwealth v. Negri* (Pa.), 198 A. 2d 595, 601; *Miller v. United States, supra* (p. 309 of 357 U. S., p. 1338 of 2 L. Ed. 2d). See also Wilgus, *Arrest without a Warrant,* 22 Mich. L. Rev. 798, 806.

The similar rule as to the execution of a search warrant has often been stated as this Court stated it in *Goodman v. State,* 178 Md. 1, 8, and *Frankel v. State,* 178 Md. 553, 561 (after noting that the Maryland search warrant statute does not deal with the formalities of the execution of the warrant), that is, that in serving a search warrant a demand is necessary prior to breaking doors if someone is in charge of the premises. Some decisions and some statutes, analogous to those as to arrest, require announcement of authority and purpose and refusal to admit before force can be used. Yet, as in the similar arrest cases, similar exceptions and qualifications have regularly been engrafted on the general rule whether it be imposed by common law or a statute (which often is declaratory of the common

law).[1] If the exigencies and practicalities of the situation demand entry without prior notice and demand, force may be used to break and enter under authority of a valid search warrant. Practicalities and exigencies in searches for narcotics require the element of surprise entry, for if opportunity is given all evidence easily may be destroyed during the time required to give notice, demand admittance and accept communication of denial of entry. As one commentator said:

> "* * * it would seem that the perfection of small firearms and the development of indoor plumbing through which evidence can quickly be destroyed, have made [statutes requiring notice and entry before the use of force to enter] * * * a dangerous anachronism. In many situations today * * *, a rule requiring officers to forfeit the valuable element of surprise seems senseless and dangerous."

Kaplan, *Search and Seizure, A No-Man's Land in the Criminal Law,* 49 Cal. L. Rev. 474, 502.

In the present case when the officer in charge of those executing the warrant was asked why he did not advise the occupants of the house of his presence and request admittance, he replied: "It has been my experience in the past twelve years when you knock on a door when you suspect drugs being on the premises, they are often disposed of by flushing down the toilet or thrown out in some manner."

Cases which have held that it is not necessary to give warning and demand admittance if the purposes for which a valid search warrant were procured would in all probability be entirely frustrated thereby, include *People v. Villanueva* (Dist. Ct. App., 2d Dist., Div. 2, Calif.), 33 Cal. Rptr. 811, and *Commonwealth v. Manduchi* (Super. Ct. Pa.), 198 A. 2d 613. Also see, for a case where the defendant was caught in the act of destroying evidence, *People v. Shelton* (Dist. Ct. App., 1st Dist., Div. 2, Calif.), 311 P. 2d 859; and compare, as to federal law,

---

1. For such a statute and a case making such an exception, see Cal. Penal Code, Sec. 1531, and People v. Villanueva (Dist. Ct. App., 2nd Dist., Div. 2, Calif.), 33 Cal. Rptr. 811.

*Masiello v. United States* (D. C. Cir.), 317 F. 2d 121. For an excellent discussion, see also Collings, *Towards Workable Rules of Search and Seizure—An Amicus Curiae Brief,* 50 Cal. L. Rev. 421, 449-451.

We hold that in the case before us the actions of the police in breaking into the premises without warning were reasonable, permissible and legal and the evidence seized was admissible against the appellant.

The Supreme Court has held that binding federal constitutional safeguards are not affronted by such a holding. In *Ker v. California,* 374 U. S. 23, 10 L. Ed. 2d 726, it was observed that the entry by police officers was without compliance with the California statute requiring notice in that they had entered unannounced, without permission and by force, in order to prevent destruction of narcotics, but was valid under California law as "within a judicial exception which had been engrafted on the statute by a series of decisions * * * and that the noncompliance was therefore lawful." The Supreme Court concluded (p. 40-41):

> "We therefore hold that in the particular circumstances of this case the officers' method of entry, sanctioned by the law of California, was not unreasonable under the standards of the Fourth Amendment as applied to the States through the Fourteenth Amendment."

We turn to the point of the legality of appellant's arrest. We think it was lawful. The appellant was a maintaining resident of the premises being searched. He had been seen during the period of observation which preceded the issuance of the search warrant, as had his brother, in activities on the premises which led to the reasonable conclusion that he was involved personally in the narcotics traffic. He had been seen, just before the search began, to enter the premises with his brother who was carrying a coat in which narcotics were found when the search was made. He was a known addict and admitted to the police that he was a heavy user and he had fresh hypodermic needle marks on his arm. That the narcotics were not on his person but in the house of which he was a resident did not prevent the inference the police and the trial court drew—

that he had possession and control of narcotics—from properly and permissibly being drawn.

Possession and control need not be immediate and direct but may be constructive. *Armwood v. State,* 229 Md. 565, 570; *Bryant v. State,* 229 Md. 531, 537; *cf. Polansky v. State,* 205 Md. 362; *Jordan v. State,* 219 Md. 36, cert. den. 361 U. S. 849, 4 L. Ed. 2d 87, and *Rhodes v. State,* 219 Md. 279.

*Griffin v. State,* 232 Md. 389, 393, held that a conditional arrest under a search warrant was proper, being no more than a compliance with a directive to the police to do what, in the absence of such a command in the warrant, they should do— arrest those whom the revelations flowing from the search permitted by the warrant indicated were guilty of the commission of a crime. We think that is what the police did here, that the arrest was lawful and that the evidence permitted the trier of fact to find the appellant guilty of possession and control of narcotics.

*Judgment affirmed.*