ROBERT HARRY DAVIS AND MAXINE TONI
GREEN, a/k/a MAXINE TONI DAVIS *v.*
STATE OF MARYLAND

[No. 239, September Term, 1969.]

*Decided March 3, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Norman N. Yankellow* (*Joseph Rosenthal* on the brief) for appellants.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore City,* and *Stuart E. Hirsch, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Charged jointly under two separate indictments in the Circuit Court for Baltimore County, appellants Robert Davis and Maxine Green were subsequently convicted on January 27, 1969 at a court trial of the following offenses:

*Green*
February 28, 1968—Possession and sale of marihuana (Indictment #34298)
March 23, 1968—Possession of marihuana and possession of narcotic paraphernalia (Indictment #34297)

*Davis*
February 28, 1968—Control of marihuana
(Indictment #34298)
March 23, 1968—Control of marihuana (In-
dictment #34297)

Appellant Green was sentenced to three years and appellant Davis to five years under the jurisdiction of the Department of Correction. Each appellant contends on this appeal that the evidence was insufficient to support his convictions.[1]

The pertinent facts are these: On December 26, 1967, appellants each signed, as husband and wife, a two-year lease on an apartment in Baltimore County. On February 28, 1968, a police officer working under cover, Thomas Manzari, went to appellants' apartment accompanied by one Terry Diamond. Appellant Green admitted Miss Diamond to the apartment but told Manzari to wait outside. A few minutes thereafter, Diamond emerged from the apartment and conversed with Manzari, following which Manzari returned to the apartment where he met Green, who was then standing outside of her apartment. Manzari asked Green to sell him $50.00 worth of marihuana. Green agreed, went by herself into the apartment and returned with a "Read's Drug Store bag" full of marihuana, which Manzari then bought.

Subsequently, the police obtained a search warrant for appellants' apartment which was executed at 5:15 p.m. on March 23, 1968. The officers entered the apartment through the unlocked door after their knock went unanswered. Appellant Green was present in the apartment; appellant Davis was not. The police observed in plain view on the living room coffee table two small pieces of hashish and a razor blade. Appellant Davis then entered

1. The docket entries erroneously show that appellant Davis was convicted of sale of marihuana under Indictment #34298 and of possession of narcotic paraphernalia under Indictment #34297. The docket entries are similarly incorrect in showing that appellant Green was convicted of control of marihuana under both indictments.

the apartment. The police continued their search of the apartment and found a metal box on top of the stereo record cabinet which, upon inspection, was found to contain suspected marihuana pipes, a bottle cap, an eyedropper, a needle, a piece of cotton still in the bottle cap, a small postal scale and an envelope containing marihuana. An examination of appellant Davis revealed needle marks on his arm and armpits of a type commonly found on narcotic addicts and made by hypodermic injection.

Mrs. Dorothy Glazer, a part-time rental agent for the apartment development in which appellants had rented their apartment, testified that both appellants signed the lease in her presence. She stated that she recognized them at the trial because "They lived in the apartment right next door to me."

Isadore Davis, appellant Davis's father, testified on his son's behalf that he paid the rent on the apartment; that his son had appellant Green "in a family way" and he (the older Davis) was "looking to protect" Green until the baby was born; that his son resided at home with him, although he did stay with Green two nights weekly between January 1, 1968 and the end of March, 1968.

There was evidence showing that during their search of the apartment, the police found some men's slacks, shaving cream, and a razor in the apartment.

In convicting Davis of having under his "control" the marihuana which Green sold to Manzari on February 28, 1968, the trial court said:

> "He was the tenant, one of the two tenants of that apartment. He was there two-sevenths of the time. The marijuana came from that apartment. * * * There is no question that it was not in his actual physical possession, no proof that it was, but he did have control as a tenant and as a user of the apartment and its contents. So that, in my judgment, the State has met the burden of proving guilt beyond a reasonable doubt and to a moral certainty."

In convicting Davis of having "control" of the marihuana and hashish found in the apartment on March 23, 1968, the trial judge said:

> "Testimony shows that he was a resident two-sevenths of the time, and he leased the premises here. Also he had needle marks on his arms."

We hold that the trial judge, in convicting appellant Davis of control of marihuana on February 28, 1968, was clearly erroneous in his judgment on the evidence; we think the trial judge's conclusion that Davis had marihuana under his control on March 23, 1968 was not clearly erroneous.

Maryland Code, Article 27, Section 277, makes it unlawful for any person, *inter alia*, to "have under his control" any prohibited narcotic drug. As used in the statute, the term "control" means "to exercise restraining or directing influence over," *viz.*, to relate to authority over what is not in one's physical possession. *Franklin v. State*, 8 Md. App. 134; *Haley v. State*, 7 Md. App. 18; *Speaks v. State*, 3 Md. App. 371. To obtain a conviction for controlling a narcotic drug under Section 277, it is not necessary for the State to allege or prove *scienter*. *Jenkins v. State*, 215 Md. 70; *Hunt v. State*, 2 Md. App. 443. In other words, the State is not required to show that the accused's control of the narcotic drug was knowing and wilful; it is no excuse that the accused does not know that what he controls is a prohibited narcotic drug. But before the State may obtain a conviction, it must adduce evidence to meet the test of legal sufficiency; such evidence must show directly, or support a rational inference, that the accused did in fact control the drug in the sense contemplated by the statute, namely, that he exercised restraining or directing influence over it.

It has been held that where one has exclusive possession of a home or apartment in which prohibited narcotics are found, it may be inferred, even in the absence of other incriminating evidence, that such person knew

of the presence of the narcotics and had control of them; but where the accused has not been in such exclusive possession, it may not be inferred that he knew of the presence of the narcotics and had control of them, unless other incriminating circumstances are shown which tend to buttress such an inference. *Evans v. United States,* 257 F. 2d 121 (9th Cir.). *See also Frank v. State,* 199 So. 2d 117 (D.C.App. Fla.). The Supreme Court of California pointed out in *People v. Redrick,* 359 P. 2d 255, that no sharp line can be drawn to distinguish the congeries of facts which will, and those which will not, constitute legally sufficient evidence that a person had control of a narcotic found in a place to which he had access, but not exclusive access, and over which he had some control, but not exclusive control.

In *Haley v. State, supra,* we reversed a conviction for control of narcotics where the evidence showed only that the defendant was found in a dwelling where prohibited narcotics were discovered. In that case, the evidence showed that the accused had no proprietary interest in the premises, did not reside there, and the evidence did not show that he had previously visited the premises. In *Wimberly v. State,* 7 Md. App. 302, we held that the mere fact that narcotics were found on the persons of individuals within premises where the defendant was a visitor would not, without more, justify his conviction for control of such narcotics. In *Scott v. State,* 7 Md. App. 505, we held that it could not be inferred that the defendant controlled narcotics found in his sister's pocketbook within a house in which both resided, even though there was evidence showing that the defendant was in control of other narcotics found in his bedroom. On the other hand, where it appeared that the defendant had an exclusive proprietary interest in an apartment wherein prohibited narcotics were found—some on his actual person, and others secreted within the apartment—his conviction for control of narcotics was manifestly proper. *See Speaks v. State, supra.* Where the evidence showed that the defendant was a narcotics addict with fresh needle

marks on his arms, and was "a maintaining resident" of a home frequented by known narcotics addicts with whom he was seen to converse, the discovery of prohibited narcotics within the home justified defendant's conviction for the control thereof. *See Henson v. State,* 236 Md. 518. And where the accused was the sole lessee of an apartment within which narcotics were found in his presence by the police in plain view on the table, a conviction for control was proper, even though there was evidence that a number of other persons frequented the premises on a regular basis. *Munger v. State,* 7 Md. App. 710. In *Dodson v. State,* 213 Md. 13, marihuana cigarette butts were found on premises occupied by the defendant and his wife. The evidence showed that the wife had not been on the premises the four days immediately preceding the discovery of the cigarette butts by police. The court in convicting defendant of the control thereof stated: "The fact that Dodson had occupied the apartment alone for four days was some evidence that the [marihuana] cigarette butts were in his possession." In addition to this evidence, the court pointed out that there was other evidence showing that Dodson had sold narcotics to another person a short time prior to the discovery of the marihuana in his own home. In *McCuen v. State,* 3 Md. App. 73, we affirmed a conviction of control of narcotics found secreted under a wash basin in the defendant's prison cell which he alone occupied, even though there was evidence showing that others visited the cell with some regularity. There was also evidence in that case showing that at the time the narcotics were found, appellant appeared to be under the influence of a stimulating drug. In *Broadway v. State,* 3 Md. App. 164, we affirmed a conviction for control of narcotics where the defendant was a visitor on premises where narcotics were found, there being evidence showing that the defendant was a narcotics addict, had needle marks in his arms, and was in extremely close proximity to the narcotics found on the premises. *See also Mazer v. State,* 212 Md. 60 (narcotics found in automobile under exclusive

control of accused) ; *Yanch v. State,* 201 Md. 296 (lottery slips found in tavern-residence under control of husband and wife) ; *Shelton v. State,* 198 Md. 405 (lottery slips found in tavern) ; *Agee v. State,* 8 Md. App. 148; *Williams v. State,* 7 Md. App. 5; *Propst v. State,* 5 Md. App. 36; *Scarborough v. State,* 3 Md. App. 208; Anno., 91 A.L.R.2d 810-831.

The only evidence linking appellant Davis with the marihuana sold by Green to Manzari on February 28, 1968 was that he was a co-lessee of the premises, resided there at least two nights weekly, and had an intimate personal relationship with the co-lessee Green. It was not shown that Davis was on the premises at the time of the sale. There was no evidence or inferences drawable therefrom to show where in the apartment Green kept the marihuana which she sold Manzari, nor was there any evidence showing that Davis knew Green had marihuana on the premises at that time or was using the apartment for the purpose of keeping and/or selling that prohibited narcotic drug. The conviction of Davis for exercising restraining or directing influence over the marihuana sold by Green to Manzari would appear to rest entirely on the fact of his co-occupancy of the apartment and his relationship with Green. To convict Davis because, as a joint occupant of the premises from which the marihuana was sold, he had non-exclusive access thereto is to infer his guilt solely on account of his intimate relationship and association with Green. We think this, without more, too thin a nexus upon which to predicate guilt, and we therefore reverse Davis's conviction of control of narcotics on February 28, 1968.

As to the marihuana found in the apartment on March 23, 1968, we think there was evidence, in addition to the fact of Davis's co-occupancy of the apartment with Green, from which it could properly be inferred that Davis was in control of the marihuana in the metal box and that in plain view on the coffee table. The needle marks found on Davis's arm at the time of his arrest permitted an inference that he knew of the presence of,

and was directly connected with, the narcotic paraphernalia found in the metal box, within which was also found an envelope of marihuana and some marihuana pipes. The fact that the hashish was lying in clear view of anyone having a right of access to the premises tended to establish that Davis exercised control of it. The evidence that he entered the premises shortly after the police arrived tended to establish his identification with the marihuana exposed to plain view within the apartment. On these facts, we think Davis's conviction for control of marihuana on March 23, 1968 was not clearly erroneous. See Maryland Rule 1086.

That the convictions of Green were not clearly erroneous is too clear to require extended discussion. The evidence showed that she possessed and sold marihuana to Manzari on February 28, 1968. That she possessed marihuana and the narcotic paraphernalia found in plain view in the apartment on March 23 is equally clear. She was present at the time the police undertook their search. There was evidence that she had engaged in at least one previous sale of marihuana from the premises. On these facts, an inference is clearly proper that she knew of and possessed the marihuana and narcotic paraphernalia in the metal box and that found on the coffee table.

> *As to Green: Judgments affirmed.*
> *As to Davis: Judgment affirmed under indictment #34297.*
> *Judgment reversed under indictment #34298.*