WILLIAM RUDOLPH ANDERSON, JR., a/k/a
WILLIAM RANDOLPH ANDERSON, a/k/a
WILLIAM ALBERT ANDERSON *v.*
STATE OF MARYLAND

[No. 542, September Term, 1969.]

*Decided July 7, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Kenneth A. Pressman* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Peter D. Ward, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Sales of narcotics having been made on March 11 and 12, 1969 to a police informant at 2001 Booth Street in Baltimore — a two story row house dwelling in which Jerry Sawyer held the proprietary interest—police obtained a warrant to search the premises and the persons of Sawyer and one Arthur Carter, who were observed to be on the premises when the narcotic sales were made. On March 13 at 9:00 a.m. the officers executed the warrant by forcing entry to the premises. A man, later identified as Walter Perry, was apprehended as he attempted to run from the house. The police found Sawyer lying in the living room, "where he had tripped" (lost consciousness). Two feet from Sawyer's body the police found fourteen glassine envelopes containing a substance later determined to be heroin. The envelopes were fastened together by means of a rubber band.[1] On Sawyer's person the police found a hypodermic needle and syringe. Also found in the living room was a burnt bottom bottle cap containing narcotic residue. The officers found a metal case on the chair in the living room containing a hypodermic needle, burnt bottle caps containing a narcotic residue, and three improvised hypodermic syringes. On a shelf underneath a television set in the living room the officers found a paper bag containing another burnt bottle cap, also containing a narcotic residue, a hypodermic needle and an improvised syringe.

---

1. According to the allegations in the search warrant application (which did not constitute substantive evidence at the trial) it was from this packet of narcotics that Sawyer made drug sales to the police informer on March 11 and 12.

The second floor of the dwelling contained two bedrooms. The rear bedroom was being lived in; the front bedroom contained only a bed and did not appear to be lived in. A search of the rear bedroom uncovered two capsules containing methadone and a hypodermic needle in clothing belonging to Carter which was hanging in the cupboard. In the front bedroom police found appellant seated on the bed. They recovered a gun belonging to him from under the mattress but no narcotics or narcotic paraphernalia were found in that room. The appellant was observed to have a fresh needle mark in his arm which had been made within a forty-eight hour period prior to his arrest. He also had old needle tracks on both arms.

Appellant was convicted at a court trial of possessing the narcotic paraphernalia found in the house and with the control of heroin. He was sentenced to two concurrent three-year terms of imprisonment. He contends on this appeal that the evidence was insufficient to support the convictions.

Appellant testified at the trial that he resided with his mother, father, and brother in a home about one block from Sawyer's house. He stated that he was employed in a bakery; that he left work at 4:00 a.m. on March 13, and being unable to get into his own house, he went to Sawyer's house to sleep; that Sawyer, fully dressed, let him in at 5:05 a.m. and permitted him to sleep in the front bedroom. Appellant stated that there was no one else in Sawyer's house when he entered; and that he went to sleep and was aroused the following morning when the police forced entry to the premises. Appellant admitted that he had used heroin six or seven times in 1968, but he claimed that he had not used narcotics since that time. He testified that he never took narcotics at Sawyer's house. He professed friendship with Sawyer. He admitted that he had stopped at Sawyer's house the night before the police raid on his way to work, but he denied knowing either Carter or Perry. Perry, who the evidence showed had four fresh needle marks in his arm when he

was arrested by the police, testified that he did not know the appellant.

Maryland Code, Article 27, Section 277 makes it unlawful for any person to "have under his control" any prohibited narcotic drug. As used in the statute the term "control" means "to exercise restraining or directing influence over," *viz.*, to relate to authority over what is not in one's physical possession. *Franklin v. State*, 8 Md. App. 134; *Haley v. State*, 7 Md. App. 18. Section 297 of Article 27 makes it unlawful (with exceptions not here pertinent) to "have or possess a hypodermic syringe or needle or any instrument or implement adapted for the use of habit-forming drugs by hypodermic injections and which is possessed for the purpose of administering habit-forming drugs * * *." As used in this Section, the term "possess" means "the act or condition of having in or taking into one's control or holding at one's disposal." *Munger v. State*, 7 Md. App. 710. To constitute possession of narcotic paraphernalia within the ambit of the statute, the possession need not be immediate and direct; it may be constructive; and sole possession is not required — there may be joint possession in several persons and the duration of the possession is not material. *Jason v. State*, 9 Md. App. 102; *Haley v. State, supra.*

To obtain a conviction for control of a narcotic drug or for possession of narcotic paraphernalia the State must adduce evidence to meet the test of legal sufficiency; such evidence must show directly or support a rational inference that the accused did in fact control the drug or possess the paraphernalia in the sense contemplated by the statutes, namely, as to control of the drug, that he exercised restraining or directing influence over it, and, as to possession of the paraphernalia, that he had it in his control or held it at his disposal. *Davis v. State*, 9 Md. App. 48.

In *Jason v. State, supra*, we held that a person may be in control of a narcotic without being in physical possession of it; that if he is in constructive possession of the drug it is under his control; that constructive posses-

sion exists when the drug is taken into a person's control or he holds it at his disposal but is not on his person so as to be immediate or direct or physical possession; and that whether the drug is taken into one's control or he holds it at his disposal depends on the particular facts and circumstances of each case. But once a narcotic drug is injected into the vein, it is no longer within one's control in the sense contemplated by Section 277; but evidence showing that a person has a prohibited drug within his system tends to show circumstantially that he was in possession and/or control of it prior to taking it. *Franklin v. State, supra,* at page 138.

Thus, in *Broadway v. State,* 3 Md. App. 164, we affirmed a conviction for control of narcotics where the defendant was a visitor on the premises where narcotics were found, there being evidence showing that the defendant was a narcotic addict, had fresh needle marks in his arms, and was in extremely close proximity to narcotics found in a room in which he was seated. In *Haley v. State,* 7 Md. App. 18, we reversed a conviction for control of narcotics where the evidence showed only that the defendant was found in a dwelling where prohibited narcotics were discovered. In that case the evidence showed that the accused had no proprietary interest in the premises, did not reside there, had not previously visited the premises, and the drugs were found secreted within the house. In *Wimberly v. State,* 7 Md. App. 302, we held that the mere fact that narcotics were found on the persons of individuals within premises where the defendant was a visitor would not, without more, justify his conviction for control of such narcotics. In *Scott v. State,* 7 Md. App. 505, we held that it could not be inferred that the defendant controlled narcotics found in his sister's pocketbook within a house in which both resided, even though there was evidence showing that the defendant was in control of other narcotics found in his bedroom. In *Henson v. State,* 236 Md. 518, the defendant was convicted of controlling narcotics found in a dwelling in which he resided. There, the evidence showed that ap-

pellant was a narcotic addict with fresh needle marks on his arms, and was "a maintaining resident" of a home frequented by known narcotic addicts with whom he was seen to converse. In *Hill v. State,* 237 Md. 630, the police searched the apartment occupied by the defendant and two others and found heroin and narcotic paraphernalia. The evidence showed that the defendant had "fresh" needle marks in her arm. She admitted using narcotics four days prior to her arrest, and also admitted knowing that the narcotic paraphernalia was in the apartment. Her conviction for possession and control of heroin was affirmed.

Appellant in the instant case did not have actual physical possession of the heroin or narcotic paraphernalia found in the house. He had no proprietary interest in the premises, nor was there any substantive evidence adduced that he was in the house when sales of narcotics were made on March 11 and 12. But the trier of fact was not obliged to believe that appellant was, as he claimed, a casual and innocent overnight lodger. According to his own testimony, he was friendly with Sawyer and had been in his house the evening of March 12. He admitted prior use of heroin and had old needle tracks on his arm to prove it. He also had a needle mark on his arm of such fresh vintage as to show that it was made within forty-eight hours prior to his arrest. That the trier of fact could properly conclude that the fresh needle mark indicated the injection of a narcotic drug while appellant was in Sawyer's house is, we think, entirely clear, particularly in view of the evidence showing that the house was so openly and liberally sprinkled with narcotics, narcotic paraphernalia, and narcotic abusers as to be characterized as a "shooting gallery"; indeed, one of the occupants had four fresh needle marks on his arms, and another was lying unconscious on the floor from narcotic over-usage. That the drug which had been injected into appellant was heroin would be a rational inference flowing from his admitted prior use of the drug and from the discovery of such a large quantity of it, together with

the necessary paraphernalia for "shooting" it, found in the living room. While appellant may not have had a "full partnership" or joint control in the heroin found in the living room of Sawyer's house, we think the facts and circumstances of the case are such as show at the least that he controlled so much of it as he injected into himself, as evidenced by the fresh needle mark, in Sawyer's house prior to the entry of the police. In no event could we conclude that the judgment of the trial court in finding appellant guilty of controlling heroin was clearly erroneous under Maryland Rule 1086. *Cf. Davis v. State, supra.*

For similar reasons, we hold that the evidence was legally sufficient to show that appellant possessed, either actually or constructively, so much of the narcotics paraphernalia found in Sawyer's house on March 13 as enabled him to receive an injection with a narcotic drug. *See Peachie v. State,* 203 Md. 239.

During the trial appellant did not challenge the legality of his arrest or the warrant authorizing the search of Sawyer's house. Nor did he object to the admission in evidence of any of the items seized from the house. Consequently, the questions of the legality of the warrant, search, and arrest of appellant are not properly before us. Maryland Rule 1085. Had they been, we would have found no illegality and upheld the admission of the evidence at the trial.

*Judgments affirmed.*