492 A.2d 658

**Edward ANAWECK, Jr. and Lena A. Anaweck**

v.

**STATE of Maryland.**

**No. 1205, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

May 17, 1985.

240

---

Arnold M. Zerwitz, Towson, for appellants.

Diana G. Motz, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and T. Michael McDonough, Asst. State's Atty. for Baltimore County, Towson, on brief), for appellee.

Argued before MOYLAN, ADKINS and ROSALYN B. BELL, JJ.

MOYLAN, Judge.

Seldom has evidence of other crimes been more relevant and valuable in helping to prove the crime in issue. Seldom have the appellants themselves made a more forceful case in support of that relevance and value.

■ The appellants, Edward and Lena Anaweck, husband and wife, were convicted by a Baltimore County jury, presided over by Judge William R. Buchanan, Jr., of the unlawful possession of cocaine in sufficient quantity to reasonably indicate an intent to distribute. Upon this appeal, they raise two substantial[1] contentions:

1) That Judge Buchanan erroneously permitted the introduction of evidence revealing other criminal activity on the part of both appellants; and

2) That the evidence was not legally sufficient to support the convictions for possession with intent to distribute.

■ The two contentions are so inextricably intertwined that our discussion will randomly wander back and forth between them. In terms of legal sufficiency, an otherwise pallid but viable *prima facie* case will take on a far ruddier hue with the infusion of the earlier observations of criminal activity. Conversely, that salutary contribution to evidentiary robustness as opposed to bare sufficiency, will demonstrate the relevance and the value of those earlier observa-

---

1. The appellants also, to be sure, raised the insubstantial contention that the subsequent offender statute under which Edward Anaweck was sentenced was unconstitutionally cruel and unusual according to *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Our summary dismissal of the contention is based upon the fact that the issue now argued was not presented to the trial court and is not, therefore, preserved for appellate review. Md.Rule 1085. Counsel for the appellants did, indeed, question the constitutionality of the statute, but upon utterly unrelated grounds dealing with inadequate notice and having nothing to do with proportionality under the Eighth Amendment. In any event, *see Bryan v. State*, 63 Md.App. 210, 492 A.2d 644 (1985).

tions of criminal activity. "As the creeper that girdles the tree-trunk, the Law runneth forward and back...." [2]

Edward and Lena Anaweck lived at 2532 McComas Avenue in Baltimore County. On December 12, 1983, three officers of the Maryland State Police executed a search and seizure warrant at the McComas Avenue residence. At the time of the search, Edward Anaweck was not at home. Lena Anaweck was sitting in the kitchen, along with another individual named Charles Miller. In the course of the search, Lena Anaweck directed the troopers to a camera box located on a shelf in a closet in a first-floor bedroom. Recovered therefrom was a large plastic baggie containing five smaller baggies, each of which contained a white powdery substance which the State Police Crime Laboratory determined to be cocaine having a purity of 36.4%.[3] This was the contraband that was the gravamen of the possession convictions.

As we shuttle from "legal sufficiency" to "other crimes" to "legal sufficiency" again, our initial approach will view the events of December 12 as if frozen in time, encumbered by neither future nor past. What would we have if the evidence of December 12 were isolated in an historic vacuum chamber? We would have the argument on legal sufficiency precisely as framed by the appellants. It is an argument of potent force, at least for the ultimate finders of fact if not for the legal referee.

The appellants were not caught with the contraband in their hands. That, of course, is not legally fatal to proof of possession, but it does at least make the burden of persuasion a heavier one. "Possession and control need not be immediate and direct but may be constructive." *Henson v. State*, 236 Md. 518, 525, 204 A.2d 516 (1964); *Bryant v. State*, 229 Md. 531, 537, 185 A.2d 190 (1962). "Appellant's

---

**2.** Excerpt from "The Law of the Jungle," by Rudyard Kipling in *The Second Jungle Book* (1895).

**3.** This is wholesale quality. Expert testimony established that cocaine of this quality is purer than "street level cocaine" and would be considerably diluted before going on the market as "street cocaine."

argument that the mere fact that narcotics were found in his apartment does not establish beyond a reasonable doubt that he put them there or that they were in his possession is without force." *Armwood v. State,* 229 Md. 565, 570, 185 A.2d 357 (1962). "That the narcotics were not on his person but in the house of which he was a resident did not prevent the inference the police and the trial court drew—that he had possession and control of narcotics—from properly and permissibly being drawn." *Henson v. State, supra,* 236 Md. at 524–525, 204 A.2d 516. It is also "well-settled that the proscribed possession ... of narcotic drugs under the Maryland law need not be sole possession." *Folk v. State,* 11 Md.App. 508, 511, 275 A.2d 184 (1971). "[T]here may be joint possession and joint control in several persons. And the duration of the possession and the quantity possessed are not material, nor is it necessary to prove ownership in the sense of the title." *Jason v. State,* 9 Md.App. 102, 111, 262 A.2d 774 (1970).

A single eyewitness, lucky enough to catch a culprit red-handed, can in a few sentences easily prove sole and actual possession of contraband. The proof of joint or constructive possession, on the other hand, is frequently more circuitous and frequently involves a set of predicate circumstances from which the inference of joint or constructive possession may permissibly arise.

This latter was the modality of proof in the case at bar. In such a case, the skirmishing ranges over a broad field. Defense counsel will parry every circumstantial thrust with at least a colorable explanation. "It was found in his house, but he wasn't home." "It was found in *a* bedroom, but it wasn't shown to be *her* bedroom." "It was found in the house in which they resided, but three other adults resided there as well." The prosecutor, in turn, will counter-parry by blocking or deflecting the explanations thrown forward by the defense. The weapons with which advocates thrust and parry and counter-parry are relevant facts. Relevant facts, in their turn, may be described as those

facts which have significant utility in the business of thrusting and parrying and counter-parrying.

In terms of legal sufficiency, the argument made on behalf of Lena Anaweck—upon the motion for judgment of acquittal, in jury argument below, and in appellate brief and argument—was straightforward. When the searching party arrived, Lena Anaweck was in the kitchen, where no narcotics or paraphernalia were found. She was not in the bedroom, in the closet of which the only narcotics recovered were found. Although she had knowledge of the location of the narcotics, leading the police directly to them, the narcotics still may have belonged to her husband or to any other of the four other residents of the house. There was nothing to suggest that the suspect bedroom was the bedroom of Lena Anaweck; there were at least six rooms in the house, presumably including other bedrooms. There was no description of the type of clothing found in the suspect bedroom, so as even to imply that it was the bedroom of Lena Anaweck. That argument also, it will be noted, doggedly insists upon looking at the events of December 12 in a vacuum.

Again in terms of legal sufficiency, the argument made in behalf of Edward Anaweck—upon the motion for judgment of acquittal, in jury argument below, and in appellate brief and argument—was even stronger. He was not only not in the suspect bedroom at the time of the search, he was not even in the house. There was nothing to suggest that the suspect bedroom was his bedroom. There was nothing to make him a more likely possessor of the narcotics than any of the other five residents of the home in which they were found.

Even in the isolated context of December 12, the State's case was not quite so bereft of predicates for reasonable inferences; neither, however, was it any overwhelming one. There had been recovered in the course of the search, a bank statement from Patapsco Federal Savings and Loan Association in the names of Lena Anaweck and Edward

Anaweck and giving their address as 2532 McComas Avenue. There was also a Baltimore Gas and Electric Company statement in the name of Edward Anaweck of 2532 McComas Avenue. It was clearly inferable that the suspect house was the home of Edward and Lena Anaweck. Defense argument about "four other residents, three of whom are adults" [4] did take on a less sinister connotation when it came out that the "three other adults" were the three daughters of Edward and Lena Anaweck, ranging in age from 20 to 24 years. The fourth "other resident" was effectively eliminated as a suspect when it was revealed that he was the infant child of one of the daughters, the grandchild of Edward and Lena Anaweck. The situs of the search was, in the last analysis, the family home of the Anawecks and not some communal "shooting gallery." There was nothing to suggest that any other individuals were using the house or any part thereof for illicit purposes. Neither Edward nor Lena Anaweck took the stand to offer any defense or explanation.

In terms of the State's burden of production—its establishment of a *prima facie* case—the evidence of December 12, standing alone, would obviously pose a closer quantitative call than that which we are here called upon to make. The knowledge of the narcotics on the part of Lena Anaweck would make the call in her case an easy one. The call with respect to Edward Anaweck, on the other hand, would have been a closer one. His connection with the suspect property and the absence of any apparent alternative culprits would probably have been enough to permit the State to clear the "low hurdle" of legal sufficiency, but the margin of clearance would have been admittedly narrow. In this case, however, we are not called upon to make these closer decisions, for, despite the stubborn insistence of the

---

**4.** A defense which, albeit good trial advocacy perhaps, hardly qualifies the appellant Edward Anaweck, under the circumstances of this case, as "Husband, Father, or Grandfather of the Year."

appellants, we are not going to look at the events of December 12 in a vacuum.

If the evidence of December 12, standing alone, might have given rise to at least arguable ambiguities, the observations of December 10 and December 11 dissolved those ambiguities and revealed unambiguous guilt. If plausible explanations might have been offered for the suspicious circumstances of December 12, the observations of December 10 and December 11 disintegrated those explanations.

On December 10, Herman J. Mooney, a neighbor of the Anawecks for two years and a frequent visitor in their home, went to 2532 McComas Avenue in the company of Mike Wheeler, an undercover State Trooper. In the presence of Wheeler, Mooney purchased directly from Lena Anaweck a one-eighth-ounce package of cocaine for $280. Edward Anaweck was present when the sale was consummated. On the next day, December 11, Mooney went again to the Anaweck residence. Trooper Wheeler was not directly present but was an observer, in a controlled-buy situation. Both Edward and Lena Anaweck were present again and sold another one-eighth-ounce package of cocaine for $280. On the second occasion, the money was paid directly to Edward Anaweck. On both occasions, the sale was consummated in the kitchen, where incidentally Lena Anaweck was sitting with Charles Miller when the search party arrived on December 12.

These narcotics sales on December 10 and December 11 were crimes. They were crimes other than that of the charged possession on December 12. The question for decision is that of whether they were relevant and important in establishing guilt with respect to the December 12 charge of possession.

A preliminary word on the subject of relevance! Even if it could be said with certainty that the evidence of December 12, standing alone, would have established a legally sufficient, *prima facie* case of guilt as to both appellants, that would not dissipate the State's legitimate need for

additional relevant evidence. Relevant evidence is necessary not only to meet the threshold burden of production, but also to meet the far greater burden of ultimate persuasion. All evidence beyond that barely minimal amount that represents legal sufficiency will not be deemed redundant. When the State sufficiently satisfies its initial burden of production, its real task is not finished, but only begun. In the context of this case, the evidence of December 12 managed to clear the directed verdict hurdle but might still, in all likelihood, have failed to persuade 43 out of 50 juries of guilt beyond a reasonable doubt. Relevant evidence serves a vital function in helping the State satisfy not only its burden of production, but also its burden of persuasion.

We have but to look to the cases cited by the appellants themselves in support of their arguments on legal insufficiency to make the strongest possible case for the relevance of the observations of December 10 and December 11. The appellants cite *Davis and Green v. State*, 9 Md.App. 48, 262 A.2d 578 (1970), a decision written by Chief Judge Murphy (now Chief Judge of the Court of Appeals), in which we overturned a conviction of the appellant Davis for possession on February 28, 1968, on grounds of legal insufficiency, but affirmed his conviction for possession on the following March 23, even as we affirmed convictions for possession on both dates in the case of the appellant Green. With respect to the conviction that was overturned, we found it significant that the appellant Davis was not in the suspect apartment on the date that a sale occurred and, indeed, stayed there only two nights a week. We pointed out that his conviction appeared "to rest entirely on the fact of his co-occupancy of the apartment and his relationship with Green. To convict Davis because, as a joint occupant of the premises from which the marihuana was sold, he had non-exclusive access thereto is to infer his guilt solely on account of his intimate relationship and association with Green. We think this, without more, too thin a nexus upon which to predicate guilt...." 9 Md.App. at 55, 262 A.2d 578. By way of contrast, we affirmed the possession con-

viction of Davis as to March 23, even though he was not present when the search party arrived. He did arrive later, however, with fresh needle marks on his arm. We held those needle marks to be enough to give rise to a reasonable inference that he knew of, and was involved with, the narcotics found in the apartment. We observed, at 9 Md. App. 55–56, 262 A.2d 578, "[t]he needle marks found on Davis's arm at the time of his arrest permitted an inference that he knew of the presence of, and was directly connected with, the narcotic paraphernalia found in the metal box, within which was also found an envelope of marihuana and some marihuana pipes." In terms of demonstrating knowledge and involvement, the sales of December 10 and December 11 serve the same function here as the needle marks did there. In both instances, the subject is denied his pose of assumed innocence as to the "funny business" going on upon the premises.

Our affirmance in the case of the appellant Green with respect to the possession charged on March 23 is indistinguishable from the case at bar. An actual sale on Green's part one month earlier clinched her conviction for possession on March 23. "She was present at the time the police undertook their search. There was evidence that she had engaged in at least one previous sale of marihuana from the premises. On these facts, an inference is clearly proper that she knew of and possessed the marihuana and narcotic paraphernalia in the metal box and that found on the coffee table." 9 Md.App. at 56, 262 A.2d 578. The evidence of other crimes now under consideration by us removes the flaw that led to the one reversal; it serves the same salutary function as that which led to two of the three affirmances.

In *Haley, Peterson and Roberts v. State,* 7 Md.App. 18, 253 A.2d 424 (1969), we reversed the possession convictions of all three appellants where they were simply present in a house in which narcotics were found but where "none of the appellants had any proprietary interest in the premises or lived there" and where "the articles were not in the living

room but in a dresser in a bedroom under clothing, under a mattress in another bedroom, in a closet in the kitchen." 7 Md.App. at 33, 253 A.2d 424. Speaking through Judge Orth, we found significant the absence of two evidentiary links. The first, already mentioned, was the lack of any proprietary interest in the place searched. That, of course, is not the situation before us in the case at bar. The other thing missing in *Haley, Peterson and Roberts v. State* was that "there was no direct evidence properly admissible that they were engaged in violation of the narcotic laws." 7 Md.App. at 34, 253 A.2d 424. The fatal flaw there is here corrected by the evidence that both appellants were directly "engaged in violation of the narcotic laws." Evidence could hardly be more relevant and necessary than where it saves convictions from the type of reversal suffered in the very case cited to us by the appellants as authority.

They also cite *Scott v. State*, 7 Md.App. 505, 256 A.2d 384 (1969), but it has no bearing on the situation now under review. There, the appellant was found to have been properly convicted of the possession of narcotics found in the search of his bedroom but not properly convicted of the possession of narcotics found in his sister's purse in a part of the house occupied by that sister. Even there, we suppose, if evidence of earlier criminal activity had demonstrated that the appellant had been selling from his sister's purse, the situation might well have been otherwise.

Indeed, in *Folk v. State, supra,* we reviewed all of the narcotics possession cases in which the evidence was held to be not legally sufficient to support a finding of joint possession and identified the common thread running through them, at 11 Md.App. 514, 275 A.2d 184:

"The common thread running through all of these cases negating joint possession is 1) the lack of proximity between the defendant and the contraband, 2) the fact that the contraband was secreted away in hidden places not shown to be within his gaze or knowledge or in any way under his control, and 3) the lack of evidence from which a reasonable inference could be drawn that the

defendant was participating with others in the mutual use of the contraband."

Against this benchmark, the relevance and vital importance of the "other crimes" evidence here in issue looms large. The significance of any "lack of proximity between the defendant and the contraband" on December 12 pales with the demonstrated proximity between both defendants and the contraband 24 hours earlier and 48 hours earlier. The claim that "the contraband was secreted away in hidden places not shown to be within... [their] knowledge or in any way under [their] control" cannot be made in the face of demonstrated knowledge and control twice within 48 hours as the appellants negotiated a sale in the kitchen, walked off into another part of the house to retrieve the contraband from the cache, and immediately returned to the kitchen with the contraband to consummate the sale. There is obviously no "lack of evidence from which a reasonable inference could be drawn that the [appellants were] participating ... in the mutual use of the contraband" when the appellants are shown to be selling significant amounts of contraband for significant sums of money on at least a daily basis. A very shaky case without the evidence of December 10 and December 11 becomes an overwhelming case with that evidence.

Just as we summarized, in *Folk v. State,* the failures in terms of legal sufficiency, we also summarized the successes in that regard. The successes show, by positive example, the same thing already demonstrated by the failures: the vital significance of highly relevant evidence, albeit evidence of "other crimes."

In *Henson v. State, supra,* the appellant, even as the appellants here, "was a maintaining resident of the premises being searched" and on which contraband drugs were found. 236 Md. at 524, 204 A.2d 516. Even as with both appellants here, "the narcotics were not on his person but in the house of which he was a resident." *Id.* The Court of Appeals held that the inference was permissible that "he

had possession and control of narcotics" because significantly "[h]e had been seen during the period of observation which preceded the issuance of the search warrant ... in activities on the premises which led to the reasonable conclusion that he was involved personally in the narcotics traffic." 236 Md. at 524–525, 204 A.2d 516. Those observations, made on seven other days prior to the ultimate search, showed probable sales of narcotics and were, therefore, evidence of "other crimes," even as in the case at bar. An additional piece of circumstantial evidence, also of the "other crimes" variety, was that the defendant there "was a known addict and admitted to the police that he was a heavy user." What was critical to the State's case there is equally critical to the State's case here.

In *Hill v. State*, 237 Md. 630, 206 A.2d 677 (1965), the conviction of the defendant there for possession and control of heroin was affirmed where she was one of three occupants of an apartment which was searched by the police and found to contain a burnt teaspoon, a bottle cap containing traces of heroin, a hypodermic needle, two eyedroppers, and two needle holders. The defendant in that case denied using the heroin herself and testified that one of the other women had used it in her presence. She did admit, however, having used heroin on one occasion several days prior to the search and her arm did contain four fresh needle marks. The Court of Appeals held that those facts gave rise to a reasonable and permissible inference that she was in joint possession of that heroin.

In *Broadway v. State*, 3 Md.App. 164, 237 A.2d 820 (1968), the defendant was one of three persons found in the second-floor bedroom in which heroin was also found. The other two persons found in the bedroom were lawful occupants of the premises. Broadway was a mere visitor. Both close proximity to the drugs found and fresh needle marks on his arm were enough to sustain the conviction for constructive, joint possession. "The fact that the appellant was a visitor to the premises, and not one of the occupants, does not, under the circumstances of this case, insulate him

from application of the rule that evidence need not be positively connected with the accused or the crime committed in order to be admissible; it is admissible where there is a probability of its connection with the accused or the crime." 3 Md.App. at 166, 237 A.2d 820. In the case at bar, the sale of cocaine from the appellants' home on December 10 and again on December 11 helped to establish with respect to the cocaine found on December 12, that "there is a probability of its connection with the accused." *Id.*

In *Anderson v. State*, 9 Md.App. 639, 267 A.2d 302 (1970), sales to an undercover agent on March 11 and March 12, 1969 led to the issuance of a search warrant, which was executed on March 13. The defendant Anderson was found in a front bedroom, sitting on a bed, but "no narcotics or narcotic paraphernalia were found in that room." 9 Md. App. at 642, 267 A.2d 302. Anderson, moreover, "had no proprietary interest in the premises." 9 Md.App. at 645, 267 A.2d 302. It was equally clear that Anderson "did not have actual physical possession of the heroin or narcotic paraphernalia found in the house." *Id.* He was nonetheless found to be in joint, constructive possession because, significantly, he "had a needle mark on his arm of such fresh vintage as to show that it was made within forty-eight hours prior to his arrest." *Id.* The prior sales here fall within the same time frame as the fresh needle mark there. Anderson did, moreover, admit the use of heroin on six or seven occasions during the preceding year. Chief Judge Murphy attached significance to that evidence of "other crimes" in holding that the evidence was legally sufficient to show possession on March 13.

For another case holding that a fresh needle mark was relevant to show knowledge of drugs and involvement in the use of drugs sufficient to support a conclusion of joint, constructive possession, *see Jason v. State*, 9 Md.App. 102, 262 A.2d 774 (1970).

All of these cases in which the evidence was found to be legally sufficient to sustain a conviction for joint possession were synthesized in *Folk v. State, supra,* and the common denominator factors were identified, at 11 Md.App. 518, 275 A.2d 184:

"The common thread running through all of these cases affirming joint possession is 1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband."

Against this benchmark as well, the relevance and vital importance of the "other crimes" evidence here in issue looms large. Close proximity between both appellants and the cocaine was shown on December 10 and 11, even if the connection was less proximate on December 12. The presence of the cocaine was, moreover, shown to be within the knowledge of both appellants on December 10 and 11. This has particular significance for the case against Edward Anaweck, as to whom no knowledge was shown with respect to December 12. The ownership of the suspect premises, of course, was proved even without reliance on the "other crimes" evidence. The "other crimes" evidence, however, took on critical significance again in showing "the presence of circumstances from which a reasonable inference could be drawn that the [appellants] were participating ... in the mutual use and enjoyment of the contraband." To use it for purposes of commercial profit is just as surely to use it as to use it for private consumption.

The decision of this Court that is almost indistinguishable from the case at bar is that of *Nutter v. State,* 8 Md.App. 635, 262 A.2d 80 (1970). The defendant Nutter was found guilty of having cocaine under his control on March 16, 1968. The legal sufficiency of the evidence to sustain the

conviction was one of the critical appellate issues. Although Nutter was the proprietor of the barbershop in which the cocaine was found, he was but one of three barbers who regularly used the shop. The cocaine was found in a pile of trash in a washbasin associated with one of the other barber chairs, not Nutter's barber chair. To establish the connection between Nutter and the cocaine found on March 16, the State introduced evidence that Nutter himself had been involved in what were probably sales of narcotics ("other crimes") on two earlier occasions, February 16 and March 2.

The purpose of this "other crimes" evidence was clear. "The occurrences of 2 March involving the agent were adduced by the State through testimony of the police as tending to prove the crime that appellant had a narcotic drug in his control on 16 March." 8 Md.App. at 649, 262 A.2d 80. In finding this "other crimes" evidence relevant and admissible in order to establish the legal sufficiency of the case of possession, this Court held, through Judge Orth, at 8 Md.App. 652, 262 A.2d 80:

> "We note that we believe that evidence of the prior days occurrences and activities was properly admissible on the issue of guilt or innocence.... We think such evidence fell within the exception to the general rule that evidence of the commission of other independent crimes by the defendant is inadmissible to show either guilt or that the defendant would be likely to commit the crime with which he is charged. Here such evidence was relevant as tending directly to prove the crime charged, and that crime and the occurrences and activities of the prior days were sufficiently linked together in point of time and circumstances. 'If proof of another crime explains or accounts for the crime for which the accused is on trial, it is relevant and competent.'"

There is yet another compelling utility in this case to showing the sales of cocaine that occurred on December 10 and December 11. The appellants were convicted not of simple possession, but of possession of cocaine with intent

to distribute or dispense. There are various ways to prove such intent. The statutory language itself strongly suggests one route to the permitted inference of intent when it speaks of possession "in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance." Art. 27, § 286(a)(1). The quantity of narcotics possessed, however, is not an end in itself; it is but evidence of intent. It is the intent itself that is critical. We discussed this very element in *Waller v. State*, 13 Md.App. 615, 618, 284 A.2d 446 (1971), where Judge Powers concluded:

> "We hold that the legislature, in using the words 'in sufficient quantity to reasonably indicate under all circumstances an intent,' meant no more and no less than *with intent,* as that phrase is well known in the law." (Emphasis in original).

Thus, even a large quantity of drugs might not yield a finding of intent to distribute, if other circumstances indicated large private consumption. Conversely, a much smaller quantity might yield such finding of intent, if evidence other than the quantity possessed showed that intent.

There was in the present case, to be sure, some evidence of an intent to sell arising from the purity and quality of the cocaine, the quantity of the cocaine, and the method of packaging. In none of those three respects, however, was the evidence so overwhelming that a strong defense argument might not have persuaded the jury that the cocaine was for private consumption. Resting on that proof alone, the State—though satisfying its threshold burden of production—still might have failed to persuade a jury unanimously and beyond a reasonable doubt that the possession was, indeed, with intent to distribute or dispense. With the additional evidence of actual sales of cocaine executed by both appellants on the two immediately preceding days, however, the State's burden of persuasion was almost reduced to a "pat hand." How better to prove an intent to sell than to prove that one is in the habit of selling!

Although numerous Maryland cases have discussed this issue, the classic treatment remains that by Judge Levine in *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976). *Ross* points out that the "frequently enunciated general rule in this state, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible." 276 Md. at 669, 350 A.2d 680. Rather than simply intoning a legal platitude, however, Judge Levine went on to explain why we have such a rule and what purpose it is intended to serve. It is not to keep out evidence of "other crimes" just because they are damaging to the defense case. It is rather that the prejudice far outweighs the peripheral relevance when "another crime [is] wholly independent of that for which he is on trial." A jury should not be encouraged to convict a defendant simply because it is demonstrated that he has a propensity for crime generally, or for the type of crime at issue specifically. This healthy exclusionary principle has, however, a built-in limitation when the evidence of "other crimes" has a direct bearing on an issue in the case. Judge Levine elucidated, at 276 Md. 669, 350 A.2d 680, "Thus, the state may not present evidence of other criminal acts of the accused *unless the evidence is 'substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character.'* C. McCormick, *Evidence* § 190 (2d ed. 1972)." (Emphasis supplied).

In coming up with a representative, although not necessarily exhaustive, list of the relevant and legitimate purposes that "other crimes" evidence might serve, Judge Levine pointed out, at 276 Md. 669–670, 350 A.2d 680:

"There are exceptions to this general exclusionary rule which, perhaps, are equally well-recognized. Thus, evidence of other crimes may be admitted when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4)

a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identify of the person charged with the commission of a crime on trial.... Additional exceptions have also been recognized: ..." (Citations omitted).

These five examples of relevance given by *Ross* and repeated by all of its progeny do not exhaust the category; it is an open-ended list always capable of expansion wherever a clear instance of relevance might arise that somehow fails to fit neatly into one of the pigeonholes. Even *Ross* itself and the cases that follow it acknowledge that "[a]dditional exceptions have also been recognized." 276 Md. at 670, 350 A.2d 680. *Cross v. State,* 282 Md. 468, 474, 386 A.2d 757 (1978); *McKnight v. State,* 280 Md. 604, 613, 375 A.2d 551 (1977). The list of instances of relevance given in *Ross* simply serves as a helpful frame of reference for organizing quickly fully 95% of the instances when evidence of "other crimes" will have substantial relevance. The decisive criterion nonetheless remains substantial relevance itself, not merely a convenient but coincidental identification with one of its familiar illustrative examples.

In the case at bar, however, it is not necessary to be creative in searching for some new instance of relevance. The evidence of narcotics sales on December 10 and December 11 is neatly pigeonholed by the orthodox list of familiar illustrations. For the "other crimes" evidence to be shown to be relevant in any one of the five familiar ways would be enough to dictate its admissibility. The evidence in this case, however, is truly a classic embarrassment of riches in that it appears to qualify as relevant by each and every criterion.

1) *Motive:* Of the five adult residents of 2532 McComas Avenue on December 12, 1983, which one or two had a motive for constructively possessing narcotics? The observations of December 10 and December 11 revealed that the appellants, Edward and Lena Anaweck, had the motive.

The motive, of course, was procuring cash for contraband. They were shown to have reaped gross receipts for the sale of cocaine of $560 in the two preceding days alone. The evidence in question showed both what the motive was and what persons had such a motive.

2) *Intent:* There is obviously a significant overlap in the five examples of relevance, but still nuances of difference. As has already been discussed, it was necessary to show that on December 12, Edward and Lena Anaweck had the intent to sell the narcotics that they constructively possessed. To repeat what we have said before, how better can the State prove the intent to sell than by proving that one is in the habit of selling?

3) *Absence of Mistake:* Without the benefit of the observations from December 10 and December 11, a mistake could conceivably have been made in charging Edward Anaweck, at least, with constructive possession of the drugs found in his house. It might, indeed, have been one of his adult daughters who was the culprit and not he himself. Mistake was less possible in the case of Lena Anaweck, but still conceivable. The observations of December 10 and December 11, however, removed all possibility of mistake. This evidence showed Edward and Lena Anaweck to have had full knowledge of the presence of the cocaine and the location of the cocaine. It showed directly that Edward and Lena Anaweck were the two involved in the illicit trafficking in narcotics and in the illicit possession of the contraband merchandise.

4) *Common Scheme or Plan:* The sale of cocaine on December 10, the sale of cocaine on December 11, and the possession of cocaine with intent to sell on December 12 were all "crimes so related to each other that proof of one tends to establish the other." Although the cocaine seized on December 12 might, in some sense, have spoken for itself, it did not necessarily speak of "an intent to sell." To show on three successive days a sale, another sale, and the possession of merchandise for sale is evidence of "a com-

mon scheme." Indeed, when the searching party barged in on December 12, they found Lena Anaweck in the kitchen with an unknown male, the precise location where the customers were left waiting on the two preceding days, as the vendors went off to another part of the house to retrieve the merchandise that was the subject of the sale in the kitchen.

In determining that there was enough evidence to find even a nonresident in constructive possession of marijuana in *Watson v. State,* 18 Md.App. 184, 197, 306 A.2d 599 (1973), the demonstrated existence of a common scheme or plan was very pertinent where it had been proved that "the appellant Watson had been associated in the business of selling narcotics just prior to the crimes in question." By way of contrast in *Garrison v. State,* 272 Md. 123, 130, 321 A.2d 767, 771 (1974), the absence of such a common scheme or plan was a fatal defect in the State's case of possession, where the State failed to offer any substantive evidence that Shirley Garrison was "in the business of selling narcotics."

5) *Identity:* The State had an initial problem of identifying which of the five adult residents of 2532 McComas Avenue were in possession of the cocaine found therein. The "other crimes" evidence of December 10 and December 11 identified the appellants as the possessors. Q.E.D.

If ever evidence of "other crimes" had substantial relevance, this was the case! We hold, therefore, that Judge Buchanan did not abuse his discretion in admitting the evidence.

■ With that evidence now properly in the case, we return finally to the issue of legal sufficiency. What was a close case without the observations of December 10 and December 11 became, quite obviously, an overwhelming case with the addition of those observations. Judge Buchanan was not wrong in ruling that the evidence was legally sufficient to permit the case to go to the jury.

*Williams v. State,* 5 Md.App. 450, 459, 247 A.2d 731 (1968); *Metz v. State,* 9 Md.App. 15, 23, 262 A.2d 331 (1970).

The whole point is that keeping from the jurors the fuller context of what happened on December 10 and December 11 would have seriously handicapped them in their job of arriving at an accurate conclusion of just what happened on December 12. Shorn of secondary considerations, the purpose of a trial is to enable a fact finder to get an accurate picture of what happened out there on the street. The primary purpose of the law of evidence is to assist in that process. The police knew the full story. The prosecutor knew the full story. We now know the full story, and the full story helps us immeasurably in understanding what really happened on December 12. If it helps us, it would help the jurors. It would be risking unnecessarily a miscarriage of justice to deny them valuable information, for the sake of a defense expectation that they, handicapped by inadequate date, might thereby reach a wrong conclusion. We commend the court and the State for providing the necessary detail to make an otherwise murky picture, far more intelligible. That is what relevance is all about.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.