## LILLIE MAE FOLK *v.* STATE OF MARYLAND

[No. 229, September Term, 1970.]

*Decided March 31, 1971.*

The cause was argued before ORTH, THOMPSON, and MOYLAN, JJ.

*Richard E. Zimmerman,* with whom was *William S. Kilis* on the brief, for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Robert S. Rothenhaefer, State's Attorney for Frederick County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Lillie Mae Folk, was adjudged to be a delinquent child, within the provisions and intent of Article 26, Sections 70 to 70-26, of the Annotated Code of Maryland, by Judge Samuel W. Barrick, in the Circuit Court for Frederick County, sitting as a juvenile court.

On appeal she raises two contentions:

(1) That the trial judge improperly admitted into evidence an inculpatory statement made by one Jack Goodman and

(2) That the evidence was legally insufficient to sustain the finding of delinquency against her.

Chapter 432 of the Acts of 1969 made significant and sweeping changes in the law concerning the operation of and procedures in the juvenile courts in the State of Maryland. Those changes are now codified as Article 26, Sections 70 to 70-26, of the Annotated Code of Maryland. Those changes became effective on June 1, 1969,[1] and apply therefore to the appellant whose adjudication of delinquency occurred on May 20, 1970, and whose allegedly delinquent conduct occurred on April 7, 1970.

Article 26, Section 70-1 (h), provides:

> " 'Delinquent child' means a child who commits a delinquent act and who requires supervision, treatment, or rehabilitation."

Article 26, Section 70-1 (g), provides:

> " 'Delinquent act' means an act which is in violation of Article 66½ of this Code, any other traffic violation, or an act which would be a crime if done by a person who is not a child."

The petition of the State's Attorney of Frederick County alleged that the appellant:

> ". . . on or about the 7 day of April, 1970, in the County of Frederick, State of Maryland, did: unlawfully have in her possession a certain narcotic drug, to wit, cannabis: unlawfully have under her control a certain narcotic drug, to wit, cannabis."

Article 26, Section 70-18 (a), provides, *inter alia*:

> "A determination that a child is delinquent must be based upon allegations proven beyond a reasonable doubt. . . ."

In considering, therefore, the appellant's second contention, the sufficiency *vel non* of the evidence, we mea-

---

1. Except for Baltimore City and Montgomery County, which exceptions are not material to the case at bar.

sure the State's case in terms of that quantum of evidence which would be necessary to convict the appellant of the crimes of possession or control of cannabis, were she an adult and convicted of those crimes.

Beginning sometime at approximately 9:15 p.m. on the evening of April 7, 1970, Corporal Carl R. Harbaugh of the Maryland State Police, operating in civilian clothing and in an unmarked vehicle, undertook the surveillance of a red Valiant automobile on the western outskirts of the city of Frederick. Some fifteen to twenty minutes later Corporal Harbaugh and another State Trooper who had joined him approached the red Valiant as it was parked on a secluded, overgrown and abandoned baseball diamond just beyond the western fringe of the city. The lights were off, the motor was off and the windows were tightly shut. As Corporal Harbaugh approached the driver's side, the left front window was suddenly rolled down and Corporal Harbaugh, whose expertise in narcotic investigation was well-established, detected the strong odor of marihuana coming from the closed car. All of the occupants were ordered out of the automobile and placed under arrest. One of the occupants, exiting on the right-hand side of the vehicle, attempted to throw an object into the surrounding grass and underbrush. That object was immediately recovered and determined to be a small black plastic container which contained what later laboratory analysis proved to be marihuana.

The appellant was one of the six occupants of the automobile. The evidence did not establish that she was ever in direct physical possession of the contraband marihuana. The evidence was clear, however, that some person or persons in that automobile were in possession of the contraband marihuana.

It is well-settled that the proscribed possession of marihuana or of narcotic drugs under the Maryland law need not be sole possession. "[T]here may be joint possession and joint control in several persons. And the duration of the possession and the quantity possessed are not ma-

terial, nor is it necessary to prove ownership in the sense of title." *Jason v. State,* 9 Md. App. 102, 111. See also *Munger v. State,* 7 Md. App. 710; *Davis and Napier v. State,* 7 Md. App. 667; *Scott v. State,* 7 Md. App. 505; *Hernandez v. State,* 7 Md. App. 355; *Haley v. State,* 7 Md. App. 18; *Williams v. State,* 7 Md. App. 5.

Nor is it necessary, in order to be found in joint possession of a contraband drug, that the appellant have a "full partnership" in the contraband. It is enough that she controlled so much of it as would be necessary to permit her to take a puff upon a marihuana cigarette. See *Anderson v. State,* 9 Md. App. 639, 646, for an analogous situation involving the joint possession, even in minor measure, of heroin and of narcotics paraphernalia.

The Court of Appeals and this Court have on a number of occasions reviewed, on the sufficiency of the evidence, convictions of defendants who were not proved to be in direct physical possession or control of contraband drugs but were held to be in joint possession of those drugs. In some of those cases the convictions were affirmed; in others, they were reversed. A brief survey of those cases falling on either side of that legal sufficiency line is in order to determine on which side of the line the case at bar appropriately falls.

In *Haley v. State, supra,* we reversed the convictions of three defendants who had been held to be in joint possession of contraband marihuana. In that case the evidence properly before the court showed only that marihuana was found in a premises 1) in a dresser in a bedroom under some clothing, 2) under a mattress in another bedroom, and 3) in a closet in the kitchen. The defendants in that case were all arrested in the living room. None of them had any proprietary interest in the premises or lived there. None of them had any proven prior association with the premises. This Court held that since they were not found in close proximity to the marihuana uncovered by the search and since there was no direct evidence that they were engaged in any violation of the narcotics laws, no reasonable inference could be drawn

that they had any measure of joint control or dominion over the contraband.

In *Wimberly v. State,* 7 Md. App. 302, we reversed the conviction of the appellant there for the control of marihuana and for the control of amphetamines and barbiturates. In that case a house, in which Wimberly had no proprietary interest, was searched pursuant to a search warrant. Wimberly was one of approximately twelve youths found in the house. He was apprehended coming from a bathroom. In that bathroom was found a broken vial containing what laboratory analysis proved to be methadone. In reversing Wimberly's conviction, this Court pointedly did not disassociate him from possession or control of the methadone found in the bathroom from which he was seen coming, but pointed out, rather, that he had not been convicted for possession or control of methadone. We noted that the only marihuana, amphetamines or barbiturates found on the premises were found 1) in a pipe with aluminum foil over the bowl in the kitchen on the drainboard of the sink, 2) in a cabinet located in the kitchen, 3) in a dresser in a bedroom used by the owner of the home, and 4) on the persons of several individuals arrested in the living room. In reversing, this Court said at p. 308:

> "Since no prohibited drugs were found in the physical possession of the appellant, since the only drug proved to have been found in the bathroom did not support the allegations of the charges of which he was convicted, since we cannot say that the appellant was in control of the drugs found in the kitchen or bedroom or on the person of others arrested, and since there was no sufficient evidence of drugs being found in the living room other than on the person of others in the living room and since in any event the appellant had been taken into the living room by the police and seated by them by the picture window, the evidence, either considered

> in its totality or item by item, did not show directly nor did it support a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the guilt of the appellant of the offenses of which he was convicted."

In *Scott v. State, supra,* we did not reverse the conviction of the appellant there because of the harmless error doctrine. We did, however, hold that the appellant there could not be deemed responsible for heroin which was found on his premises but in a pocketbook belonging to his sister, particularly where that pocketbook was situated in a part of the premises which was occupied by the sister.

The common thread running through all of these cases negating joint possession is 1) the lack of proximity between the defendant and the contraband, 2) the fact that the contraband was secreted away in hidden places not shown to be within his gaze or knowledge or in any way under his control, and 3) the lack of evidence from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use of the contraband.

On the other hand, in *Henson v. State,* 236 Md. 518, the Court of Appeals sustained the conviction of the defendant there for possession and control of narcotics even though no narcotics were found on his person but were found simply upon the premises. Henson was, however, one of two maintaining residents of the premises. He was known to the police as an addict; he admitted to the police that he was a heavy user of narcotics; and he did have fresh hypodermic needle marks on his arm.

In *Hill v. State,* 237 Md. 630, the conviction of the defendant there for possession and control of heroin was affirmed where she was one of three occupants of an apartment which was searched by the police and found to contain a burnt teaspoon, a bottle cap containing traces of heroin, a hypodermic needle, two eyedroppers and two

needle holders. The defendant in that case denied using the heroin herself and testified that one of the other women had used it in her presence. She did admit, however, having used heroin on one occasion several days prior to the search and her arm did contain four fresh needle marks. The trial judge did not accept the testimony of the defendant there but drew the inference from all of the circumstances that she was participating in the use of heroin uncovered in the search and therefore was in joint possession of that heroin. The Court of Appeals held that that was a reasonable and permissible inference.

Similarly, this Court in *Broadway v. State*, 3 Md. App. 164, affirmed the conviction for possession and control of heroin. In that case Broadway was one of three persons found in a second-floor bedroom in which heroin was also found. The other two persons found in the bedroom were lawful occupants of the premises. Broadway was a mere visitor. Broadway was found sitting on a bed watching television. One bag of heroin was found on the floor approximately one foot from him. He did, however, have fresh needle marks on his arms, indicating at least that he was an addict. Coupled with that demonstrated predisposition to heroin was the fact that the bedroom was "exceptionally small, with barely enough room for a bed."

In *Jason, Johnson and Moore v. State, supra,* we held that the evidence was legally sufficient to sustain the verdicts of guilty for possessing and controlling both heroin and narcotics paraphernalia. In that case the three appellants and two female codefendants were all trespassers in a temporarily unoccupied apartment. Moore was found in the kitchen giving himself an injection of narcotics with an eyedropper and a needle. The appellant Johnson and one of the female codefendants were found in a rear bedroom. Johnson threw something from the window which turned out to be heroin. Capsules of heroin were also found all over the bed in the room in which Johnson and the female codefendant were found. The appellant Jason was found on the second floor attempting to

climb out of a window. All five individuals had fresh needle marks. We sustained the finding of the trial court that "all of the appellants were in control of the premises, although they were trespassers. . . [and that] in the totality of the circumstances, that all of the defendants, the appellants and the two women, were jointly engaged in the unlawful enterprise and in possession and control, actual or constructive, of the narcotics and narcotic paraphernalia found on the steps in the house, in the bedroom, and in the yard, having been thrown out the window by Johnson."

In *Anderson v. State, supra,* we held that the evidence was legally sufficient to sustain a conviction for possession of heroin in a case where the defendant was found in an upstairs front bedroom but where no contraband was found either upon his person or indeed anywhere in that bedroom. A search warrant had been obtained for the premises in question and for two individuals, neither of whom was Anderson. Anderson had no proprietary interest in the premises whatsoever. Heroin was found on the person of the owner of the premises who was arrested on the first floor. Narcotics paraphernalia was found in the living room on the first floor. In the rear bedroom on the second floor narcotics and narcotics paraphernalia were found in the clothing of one of the occupants of the premises, an individual named in the warrant. Anderson took the stand and testified that he had left work at a bakery at 4 a.m., could not get into his own house and then asked the owner of the searched premises, a friend, if he could sleep in the front bedroom. Anderson did, however, admit the use of heroin on six or seven occasions during the preceding year and he did have a fresh needle mark on his arm which had been made within forty-eight hours prior to his arrest. He was held to be in joint possession of the narcotics found in other locations within the premises. We held that:

"To constitute possession of narcotic paraphernalia within the ambit of the statute, the pos-

session need not be immediate and direct; it may be constructive; and sole possession is not required—there may be joint possession in several persons and the duration of the possession is not material." P. 643.

We said further at page 645:

"Appellant in the instant case did not have actual physical possession of the heroin or narcotic paraphernalia found in the house. He had no proprietary interest in the premises, nor was there any substantive evidence adduced that he was in the house when sales of narcotics were made on March 11 and 12. But the trier of fact was not obliged to believe that appellant was, as he claimed, a casual and innocent overnight lodger. According to his own testimony, he was friendly with Sawyer and had been in his house the evening of March 12. He admitted prior use of heroin and had old needle tracks on his arm to prove it. He also had a needle mark on his arm of such fresh vintage as to show that it was made within forty-eight hours prior to his arrest. That the trier of fact could properly conclude that the fresh needle mark indicated the injection of a narcotic drug while appellant was in Sawyer's house is, we think, entirely clear, particularly in view of the evidence showing that the house was so openly and liberally spinkled with narcotics, narcotic paraphernalia, and narcotic abusers as to be characterzied as a 'shooting gallery'; . . ."

In *Middleton v. State*, 10 Md. App. 18, we held that the evidence was legally sufficient to sustain the verdict of guilty for possession of narcotics where the narcotics were found in the trunk of a vehicle stolen from South Carolina. The vehicle had been shown to have been in the joint possession of Middleton and one other individual shortly before it was searched by the police.

The common thread running through all of these cases affirming joint possession is 1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

In the case at bar, the proximity between the appellant and the marihuana could not be closer, short of direct proof that the appellant herself was in exclusive physical possession of the marihuana. She was one of six occupants in a Valiant automobile and was, therefore, whatever her position in the car, literally within arm's length of every other occupant of that automobile. The marihuana cigarette being smoked was, at any point in time, within direct physical possession of one of those occupants. Proximity could not be more clearly established.

Nor would there be, under the circumstances of this case, any difficulty in drawing a reasonable inference that the marihuana was within the view, or otherwise within the knowledge, of the appellant. In a darkened car in a dark field, the glow from a lighted cigarette is clearly visible within that maximum radius of four to five feet between the glow and the viewer. Knowledge of the presence of marihuana would be imparted even more emphatically by the sense of smell, in a situation where the cloud of smoke and the peculiar pungent odor filled the interior of a tightly-closed automobile. Neither would the inference be unreasonable that some conversation transpired among the six persons huddled there in the dark dealing with what the cigarette and the fumes were all about. It would, indeed, be unreasonable not to infer knowledge of the marihuana on the part of the appellant.

There was, furthermore, before the fact-finder in this case the presence of abundant circumstances from which

a reasonable inference could be drawn that the appellant was participating with the five other occupants of the car in the mutual use and enjoyment of the marihuana. Six persons drove in an automobile to a lonely and secluded field that had once been a baseball diamond but was now overgrown. They there turned off the motor and the lights of the automobile. Whatever their mission, it was one where seclusion from public view was at a premium. The progress of three men and three women to a lonely field after dark, taken alone, might give rise to several reasonable hypotheses, but each of those hypotheses must then be tested against the other known data. The failure of the group to disperse two-by-two to different corners of the field, the absence of any evidence of contraceptives and the absence of any evidence of even partial disrobing would serve to negate a possible initial hypothesis that the mission was sexual in nature. The absence of alcoholic beverages of any sort would serve to negate a possible initial hypothesis that the mission was for the consumption of alcoholic beverages. Nor was there any evidence, whatsoever, to suggest that a picnic or a campfire was the mission of the party. Every item of additional evidentiary data strongly supports the hypothesis, however, that the common mission of the group was the inhalation of marihuana.

Shortly before the group left the parking lot of a shopping center in the western part of Frederick, the driver of the automobile was observed to go to the trunk and to bring out a roll of paper towels. It is common knowledge that marihuana cigarettes are not commercially manufactured and prepackaged. The illicit consumer obtains marihuana leaves on the black market and must then proceed to "roll his own." It would not be an unreasonable inference that the paper towels may have been serving that office on the night of April 7. Corporal Harbaugh also observed that what appeared to be a cigarette was lighted on the back seat of the car and was then passed to the front seat. It is common knowledge that in the marihuana-smoking culture a common cigarette is passed

communally from one smoker to another in the fashion of an Indian pipe of peace, rather than each smoker hoarding a personal cigarette unto himself. There was further evidence that when Corporal Harbaugh approached the Valiant automobile in the deserted field, the windows were tightly closed and the interior was full of the marihuana smoke. It is also common knowledge that in the marihuana-smoking culture even the smoke which has been exhaled is not permitted to go to waste but is reinhaled and reinhaled again by all of the common participants as long as it pervades the surrounding atmosphere. Ventilation is purposefully discouraged just so that the smoke will continue to pervade the atmosphere. Corporal Harbaugh personally detected, as the windows of the automobile were rolled down upon his approach, the strong odor of marihuana. Upon exiting the vehicle, one of the male occupants, Robert Rippeon, was observed to throw something into the field. It turned out to be a small black plastic container containing what chemical analysis proved to be marihuana.

The appellant did not offer any evidence to explain her presence in the deserted field in the darkened automobile wherein marihuana was being smoked.

In a case tried before the court without a jury, the test as to whether the trial judge was clearly erroneous in reaching a verdict of guilty on the evidence is whether the admissible evidence adduced at the trial either showed directly, or circumstantially, or supported a rational inference of, the facts to be proved, from which he, as the trier of the fact, could fairly be convinced, beyond a reasonable doubt, of the appellant's guilt of the offense charged and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses. *Williams v. State,* 5 Md. App. 450, 459; *Metz v. State,* 9 Md. App. 15, 23; Maryland Rule 1086. The trial judge inferred, from all of the circumstances, that the appellant went to the deserted field on the night of April 7 with five other persons for the purpose of participat-

ing with the others in the mutual use and enjoyment of marihuana and that she was so participating at the moment of her arrest. We cannot say that he was clearly wrong.

The appellant's first contention is also without merit. Corporal Harbaugh testified that when he approached the Valiant automobile and detected the smell of marihuana emanating therefrom, he ordered all of the occupants out of the car. He addressed the entire group with the remark, "Somebody has been smoking marihuana." He testified further, over the appellant's objection, that Jack Goodman, the driver of the automobile, replied, "Yes, sir, you are right." Even assuming that Corporal Harbaugh's recounting of this remark made by Jack Goodman was inadmissible hearsay, the error would clearly be harmless. The unimpeached testimony of Corporal Harbaugh that he detected the strong odor of marihuana emanating from the automobile, coupled with the recovery of the marihuana which was thrown from the automobile, established beyond all reasonable doubt that someone in the automobile was smoking marihuana. Whatever cumulative effect the recitation of Goodman's admission may have had was *de minimis* in the extreme. The critical factual issue to be resolved by the trial judge was not whether someone was smoking marihuana (that much was clear), but rather whether the appellant was participating in that smoking. The remark attributed to Goodman shed no light one way or the other on the question of the appellant's participation.

*Judgment affirmed.*