**REPORTED**

IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 2235

September Term, 2014

JOSE N. CERRATO-MOLINA

v.

STATE OF MARYLAND

Woodward,
Graeff,
Moylan, Charles E., Jr.
 (Retired, Specially Assigned),

JJ.

Opinion by Moylan, J.

Filed: June 1, 2015

The appellant, Jose N. Cerrato-Molina, was convicted in the Circuit Court for Prince George's County by a jury, presided over by Judge Daneeka V. Cotton, of 1) the possession of marijuana, 2) the possession of crack cocaine, and 3) the possession of cocaine hydrochloride. On this appeal, he raises the single contention that the evidence was not legally sufficient to have permitted Judge Cotton to deny his motion for a judgment of acquittal and to have submitted the case to the jury.

## A Preliminary Reader's Guide

Before launching into an analysis of the legal sufficiency of the State's evidence, it behooves us to ask a very simple, but critical, question: **"legally sufficient to prove what?"** The three convictions were all for simple possession of controlled dangerous substances. In the context of this case, therefore, what exactly does "possession" entail?

Permeating the appellant's argument is his insistence on an off-the-cuff layman's definition that would simplistically assume that possession must be both actual and exclusive. His motion for acquittal was "based on the fact that the State had not placed the CDS **in the hands** of the appellant." The criminal law, however, is not nearly so demanding. The contraband criminally possessed need never be in the hands of the criminal possessor. It will suffice, we hold as we undertake our sufficiency assessment, if the possession established was merely constructive rather than actual or was merely joint rather than exclusive. We will proceed to a fuller discussion of the essential characteristics of possession infra.

## A Mosaic Of Legal Sufficiency

The facts are simple. Aside from an uncontroversial chemist's report that was stipulated to, the evidence consisted exclusively of the testimony of Detective Jackson of the Prince George's County Police Department.

At approximately 10 p.m., on June 13, 2008, Detective Jackson, in a marked police cruiser, was on routine patrol on Sargent Road in Hyattsville. He observed a white Jeep, facing southbound on Sargent Road, parked but with its motor running. Detective Jackson turned his cruiser around and re-approached the Jeep from the rear. When he initially passed the Jeep, he had observed that its two occupants were drinking beer. After he turned around and approached nearer the Jeep, however, it suddenly took off and then proceeded at a high rate of speed through residential neighborhoods. As Detective Jackson followed, he observed a significant number of objects flying out of the front passenger window, a black bag and a variety of smaller items. A short distance later, the Jeep was disabled as it ran up onto a curb. Its two occupants were immediately arrested. The driver was Marlos Ramos. The passenger was the appellant.

Detective Jackson subsequently conducted a search back along the route of the chase. From the 6100 block of Westland Drive, he recovered three baggies of suspected drugs that were submitted to the Crime Laboratory and found to contain controlled dangerous substances. The Jeep was registered to Ramos. Except for the stipulated chemist's report, the detective's testimony was the totality of the case.

We will summarize briefly the evidence we deem to be significant. At least three baggies containing three different types of contraband drugs were in the white Jeep. The appellant (as the passenger) was one of the two occupants of the white Jeep. As Detective Jackson was observed to be approaching the Jeep, it sped away. That flight permits the inference of consciousness of guilt on the part of someone. During the flight, the two men (it matters not which) attempted to dispose of the drugs by throwing them out of the passenger window of the Jeep. We hold that that evidence was legally sufficient to support a finding that both the appellant and Ramos were in joint actual or constructive possession of the contraband drugs. It matters not which.

## Airborne Contraband

The appellant works himself into a lather over a meaningless distinction. He obsesses over the inconsequential detail of who threw the contraband out of the passenger window – the driver or the passenger. He argues in his brief:

> The police officer in [the] chase testified that he did not see who had thrown the objects out of the vehicle, merely that the objects were ejected from the passenger side of the vehicle. ...
>
> The Appellant asserts that there was no direct evidence that he possessed the CDS found on the street. Although it may be more probable that a passenger will throw objects out of a passenger side window, there was no evidence adduced at trial that would make it impossible for the driver to throw the objects out of the passenger side window in this instant case. Without more, the jury must speculate on who actually threw the objects out of the window – the driver or the passenger or both.

(Emphasis supplied). The jury must, indeed, speculate. In performing its broader duty of deciding whether or not to draw a permitted inference or in deciding which inference to draw out of a range of permitted inferences, the jury is by definition engaged in a speculative exercise. Informed and educated speculation, however, is not blind or haphazard speculation, which is, indeed, inappropriate.[1]

In terms of which permitted inference to draw in this case, the appellant will be no doubt chagrined at our indifference to who threw the baggies out of the window. It does not matter whether it was the driver or the passenger. Nor need the jurors have cared. What we deem significant is that the **"Appellant-Ramos team"** threw the baggies out of the window and that is all that matters. The defenestration of evidence is a bad business – whether as a principal in the first degree or as a principal in the second degree. The appellant obviously seeks solace in a distinction between exclusive possession and joint possession. It is, however, a distinction which the possessory crime law does not consider significant. Judge Orth spoke of the dispositively damning nature of joint possession in Jason v. State, 9 Md. App. 102, 111, 262 A.2d 774 (1970), cert. denied, 258 Md. 728:

> "We find that the evidence was sufficient in law to sustain the convictions as to each appellant of possession of heroin, control of heroin and

---

[1]The appellant makes an automatic villain of the verb "speculate." It is a rush to judgment. The word's etymology looks to the Latin root "spec," meaning "to look at." "To speculate" is then to think about the implications of what one has looked at and seen. Blind or purely random speculation, to be sure, can be treacherously deceptive. Informed and educated speculation, on the other hand, is a salutary and, indeed, indispensable part of the decision-making process.

possession of narcotic paraphernalia as charged. We note that <u>it is not required that there be sole possession and sole control</u>; <u>there may be joint possession and joint control in several persons</u>. And the duration of the possession and the quantity possessed are not material, nor is it necessary to prove ownership in the sense of the title."

(Emphasis supplied; citations and footnote omitted). Possession need not be actual.

In <u>Folk v. State</u>, 11 Md. App. 508, 275 A.2d 184 (1971), the juvenile appellant was found to have committed what would have been, had she been an adult, the crime of possessing marijuana. She was but one of six occupants of a car that she did not own and was not driving. No marijuana was ever observed in her actual physical possession. She was nonetheless held by this Court to have been guilty of unlawful possession. "It is well-settled that the proscribed possession of marijuana or of narcotic drugs under the Maryland law need not be sole possession." 11 Md. App. at 511. Our opinion then set out what has come to be recognized as the classic list of helpful guidelines for a case of joint possession.

"<u>The common thread running through all of these cases affirming joint possession is 1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant</u>, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, <u>or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband</u>."

11 Md. App. at 518. (Emphasis supplied).

In <u>Smith v. State</u>, 415 Md. 174, 999 A.2d 986 (2010), the police executed a search warrant on a private residence in Baltimore City. As the police entered the home, the defendant was one of five persons seated in chairs around a table. A marijuana "blunt" was

burning in an ashtray in the center of the table. All of the persons at the table "were within arm's reach of the blunt," but none had it in hand. 415 Md. at 178. Smith's argument there, but for substituting presence in a house for presence in a car, was akin to the appellant's argument here.

> "Petitioner contends that the State adduced insufficient evidence to sustain his conviction of possession of marijuana. <u>He argues that proof of his mere presence in a house where marijuana was being smoked was insufficient to sustain his conviction</u>."

415 Md. at 186. (Emphasis supplied).

Judge Harrell's opinion for the Court of Appeals soundly affirmed that the criminal possession that must be proved may be actual or constructive and may be exclusive or joint.

> "Petitioner was convicted of possession of marijuana[.] <u>The Legislature defined 'possess' to mean 'to exercise actual or constructive dominion or control over a thing by one or more persons.'</u> <u>The possession may be 'actual or constructive ... and the possession may be either exclusive or joint in nature</u>.'"

415 Md. at 187. (Emphasis supplied, citations omitted). See also <u>Moye v. State</u>, 369 Md. 2, 14, 796 A.2d 821 (2002); <u>State v. Suddith</u>, 379 Md. 425, 432, 842 A.2d 716 (2004) ("It has long been established that the mere fact that the contraband is not found on the defendant's person does not necessarily preclude an inference by the trier of fact that the defendant had possession of the contraband.").

**An Inferential Heavy Favorite
Versus An Inferential Longshot**

In affirming the legal sufficiency of the evidence, we may be going further than is necessary in pointing out that the unlawful possession need be only constructive and not actual. An inference was permissible in this case that the appellant had actual possession of the contraband drugs. In terms of the evidence jettisoned along the escape route, there were multiple throws of multiple items. Whoever made those throws (or any one of them) necessarily had, at least briefly, actual possession. As many an erring athlete has learned to his chagrin, you can't throw the ball until you have it.

No police observation, to be sure, ever caught the appellant's arm in motion, but it didn't have to. A reasonable inference could fill that gap. Self-evidently, the baggies of contraband were not self-propelled drones. Someone in the Jeep threw them out the passenger's window. There were only two people in the Jeep – the driver and the passenger. Either one or the other, therefore, threw the contraband from the window. Thus far, that is no mere inference. That is logical certainty. Going forward from that point, there emerge two competing inferences. They were by no means, however, equally potent inferences. As the thrower, the passenger (the appellant) was the heavy betting favorite. The driver was a decided longshot.

Geography favored the appellant as the probable thrower. The epicenter for the disgorging of incriminating evidence was a point just inside the passenger window. The person deployed at that apparent launching site was the appellant, not the driver Ramos. Geometry, which is a part of the business of drawing inferences, strongly favored the

appellant. If, e.g., arrows are seen flying from a particular loophole in the castle wall and it is the appellant who is stationed behind that embrasure, to attribute the arrows to the appellant would not be clearly erroneous. The appellant's plaint that "Detective Jackson ... never saw an arm extended from the [loophole]" is of no avail. Choosing between competing inferences is classic grist for the jury mill. As the Court of Appeals noted in Smith v. State, 415 Md. at 200:

> "These inferences are the very type of inferences that juries are charged with making – to make findings of fact based on the evidentiary facts and their common sense reasoning. We conclude that the inferences made by the jury in the present case were supported by the evidence. It is not relevant to consider whether it also may have been reasonable to infer that Petitioner was merely an innocent bystander. The jury determined otherwise. We defer to the jury's finding that Petitioner had knowledge of and exercised dominion or control over the marijuana."

(Emphasis supplied, citation omitted). The appellant was eminently eligible for selection as the inferential pitcher of the contraband.

Not only did positioning favor the appellant, but so, moreover, did opportunity. The driver was leading the police on a high-speed chase through the winding streets of a residential neighborhood. That, without more, is a white-knuckled activity, best pursued with two hands on the wheel. A healthy division of labor between the driver and the passenger would make far more sense than would the picture of a beleaguered Ramos desperately multi-tasking as both pilot and bombardier, while his companion sits idly by in stunned innocence. The choice of competing inferences in this case enjoyed the benefit of far more effective tie-breakers than a mere flip of a coin.

- 8 -

It is conceivable, of course, that the jury could have inferred that Ramos aided and abetted himself, but it did not do so. A conclusion that Ramos acted alone, moreover, would not have been that version of the evidence, including reasonable inferences, most favorable to the State's case. That, of course, is the version of the evidence that we are enjoined to assess in examining legal sufficiency.

In <u>Neal v. State</u>, 191 Md. App. 297, 318, 991 A.2d 159 (2010), Judge Kehoe, with respect to competing inferences, observed for this Court,

> "<u>An inference need only be reasonable and possible; it need not be necessary or inescapable</u>. ... The possibility of raising conflicting inferences from the evidence does not preclude allowing the fact finder to determine where the truth lies."

(Emphasis supplied, internal quotations and citations omitted). In the words of <u>Neal</u>, even if the appellant were not a "necessary or inescapable choice," he was at least a "reasonable and possible" choice. The eminently reasonable inference that the appellant threw the drugs out of the window is <u>ipso</u> <u>facto</u> a legally sufficient case. The appellant, understandably, has eliminated the word inference from his lexicon, but the law of evidence has not.

## How Close is Close?

In affirming the convictions for unlawful possession, we will also, purely <u>arguendo</u>, consider the alternative rationale that even if the appellant was not in actual and exclusive possession of the CDS, he was at the very least in constructive and joint possession of the drugs. If the appellant threw the drugs out of the window, his unlawful possession was

actual. If Ramos threw the drugs out of the window, the appellant's unlawful possession was at least constructive. In either event, he was guilty of unlawful possession.

The first of the Folk factors is that of "proximity between the defendant and the contraband." 11 Md. App. at 518. In his reply brief, the appellant protests that there was no showing of proximity between the appellant and the contraband.

> "There was no testimony adduced at trial that the CDS was in close proximity to the Appellant. Detective Jackson stated that he saw the CDS ejected from the vehicle, but he never testified that he saw the CDS anywhere in the vehicle, near the Appellant or not. Furthermore, no CDS was found in the vehicle or upon the Appellant or driver upon arrest. Since the CDS was ejected from the vehicle, it would be reasonable to infer that the CDS was in the vehicle somewhere, but we have no idea where. Without more, a jury would have to speculate on where the CDS was and what was the proximity of the CDS to the Appellant when the CDS was in the car."

Reply Brief at 5. (Emphasis supplied). Proximity, of course, is a relative concept and the appellant insists on looking at it from a very Lilliputian point of view. We, on the other hand, do not hesitate to take judicial notice of the fact that the Jeep was not, in terms of its capaciousness, the Titanic. The Folk decision itself established that within the passenger compartment of an automobile, everything is proximate.

> "In the case at bar, the proximity between the appellant and the marihuana could not be closer, short of direct proof that the appellant herself was in exclusive physical possession of the marihuana. She was one of six occupants in a Valiant automobile and was, therefore, whatever her position in the car, literally within arm's length of the very other occupant of that automobile. The marihuana cigarette being smoked was, at any point in time, within direct physical possession of one of those occupants. Proximity could not be more clearly established."

- 10 -

11 Md. App. at 518. (Emphasis supplied). In Johnson v. State, 142 Md. App. 172, 197, 788 A.2d 678 (2002), drugs were found to be in cozy proximity to a front seat passenger:

> "Johnson was a front seat passenger in a vehicle in which marijuana was found in the front close to where he was sitting. The marijuana was found within arm's reach of Johnson[.]"

(Emphasis supplied). Distances do shrink, depending on one's point of view.

In In re Ondrel M., 173 Md. App. 223, 236-37, 918 A.2d 543 (2007), Judge Woodward also dealt with the quality of proximity in the context of an automobile's passenger compartment:

> "First, as to the proximity factor, the marijuana in the crumpled newspaper was found on the floor directly behind the driver's seat, which was within appellant's easy reach. While the drugs were closer to the appellant in Larocca [v. State] by being immediately underneath his seat, the marijuana here was still readily accessible to appellant."

(Emphasis supplied).

In this case and even assuming, arguendo, that the driver, Ramos, was throwing the contraband out the front passenger window, the contraband, on throw after throw, had to fly right in front of the appellant's face. He, indeed, would have had to lean back to avoid being hit. If the appellant had so much as raised his hand, he would have intercepted flying contraband in mid-flight.

All of this does not even consider, moreover, the appellant's inferential proximity to the contraband prior to Detective Jackson's arrival on the scene, as the appellant and Ramos were quietly drinking beer together. If a mutually convenient spot were the center console

between the two front-seat occupants, the observations of <u>Johnson v. State</u>, 142 Md. App. at 200, would be pertinent:

> "Common sense dictates, however, that a passenger can easily place an object on top of the gear shifter, and similarly can easily remove an object from that location. As is usually the case, <u>the gear shifter was equidistant from both occupants of the vehicle</u>. We need not be certified automobile mechanics to conclude that the gear shifter was not within the exclusive dominion of the driver, as <u>it was possible for the passenger to place and remove small objects on top of it</u>."

Under a variety of possible rationales, the appellant was in proximity to the drugs that were ultimately thrown from the window.

### What Did The Appellant See?
### What Did The Appellant Know?

The second <u>Folk</u> factor is that of whether "the contraband was within the view or otherwise within the knowledge of the defendant." 11 Md. App. at 518. Once again assuming, <u>arguendo</u>, that Ramos rather than the appellant was on the mound for the Fugitives, the contraband, on pitch after pitch, would have had to fly right in front of the appellant's face on its path out of the window. It could not have been more visible to him without hitting him in the eye.

Once again the inference was permissible that the appellant had the requisite knowledge of the contraband unless we were to believe that the appellant had no idea of what was being thrown out the window or of why it was being thrown. This <u>Folk</u> factor as well tilts against the appellant. The inference was admissible that the appellant could not

- 12 -

have been so incredibly oblivious of what was going on around him and of what was likely on the evening's menu besides the beer.

### Inference Of A Common Recreational Agenda

The third Folk factor does not hurt the appellant. He had no ownership or possessory right in the white Jeep. The fourth Folk factor, however, is another matter. It is "the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband." 11 Md. App. at 518. At 10:00 p.m. on a June evening, the appellant and Ramos were sitting quietly in the parked Jeep drinking beer together. Somewhere in the vehicle, relatively modest amounts of marijuana and cocaine were close at hand. From the amount of contraband recovered by Detective Jackson, the inference was permissible that the drugs were more likely intended for personal use than for commercial sale. Although initially having charged possession with intent to distribute, the State dropped those charges before taking the case to trial. Under those circumstances, there was a reasonable and permitted inference that the two young men were following a mutual recreational agenda. Conversely, it seems highly unlikely that Ramos would have had the intent and purpose of partaking of

the drugs alone, while keeping his social companion completely in the dark with respect to his individualistic intent and purpose and sharing none of it with his companion.[2]

In the case of <u>In re Ondrel M.</u>, <u>supra</u>, Ondrel M. was, even as was the appellant here, the front seat passenger in a Mercury Mystique, which he did not own. In the car, however, Ondrel was one of four occupants, not one of two. In that case, as here, when the police initially approached the car, the car suddenly took off and led the police on a high-speed chase. 173 Md. App. at 227-28. What was ultimately recovered from the car was a green leafy substance, later identified as marijuana, in the middle of a crumpled sheet of newspaper lying behind the driver's seat on the floor of the backseat. Ondrel's argument there resembled the appellant's argument here:

> "<u>Appellant argues that the evidence was insufficient</u> to sustain the master's finding that he committed the delinquent act of possessing marijuana <u>because '[t]he State's case failed to establish that [appellant] knew of the presence of the marijuana in rear of the vehicle or that he exercised actual or constructive control over the marijuana</u> [ ]' based on '[t]he mere fact that [ ] [he] was present in the vehicle[.]'"

173 Md. App. at 231. (Emphasis supplied). Judge Woodward's opinion, rejecting that argument, expressly mentioned the reasonable inference of a common recreational agenda:

> "Finally, the evidence makes it <u>reasonable to infer that appellant and the other occupants</u> of the car in the instant case <u>were 'engaged in a marijuana-focused common enterprise</u>.'"

---

[2]One can readily hear again the voice of an elementary school teacher confronting the child who has been discovered in possession of a stick of gum or a piece of candy, "I hope you brought enough for everybody."

173 Md. App. at 237-38. (Emphasis supplied, citation omitted).

In <u>Johnson v. State</u>, <u>supra</u>, the defendant was one of two occupants of a vehicle that was stopped by the police. The stopping officer "noticed in plain view through the window what be believed to be marijuana on the gear shifter equidistant between the driver and the appellant, the front seat passenger." 142 Md. App. at 181. Johnson was convicted of, <u>inter alia</u>, the possession of marijuana. He claimed that he had no knowledge of the marijuana.

> "We are not persuaded by Johnson's insistence that he was unaware of the presence of marijuana in the vehicle."

142 Md. App. at 191. Among the reasonable inferences supporting the conviction was one that he was engaged in the mutual use of the marijuana.

> "Circumstances existed, however, from which <u>a reasonable inference could be drawn that he was participating</u> with the driver and owner of the vehicle <u>in the mutual use and enjoyment of the contraband</u>."

142 Md. App. at 198. (Emphasis supplied).

### <u>Maryland v. Pringle</u> And Common Enterprises

The inference that a defendant was a participant in a common criminal enterprise because that defendant was in close association with other individuals at a certain time and place under certain circumstances does not depend upon whether the common criminal enterprise, the possession of contraband, for instance, is for personal use and enjoyment or is for commercial profit. In <u>Maryland v. Pringle</u>, 540 U.S. 366, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003), the common enterprise that was inferred was the commercial sale and distribution of narcotic drugs.

- 15 -

When their car was stopped for speeding at 3:16 a.m., in Baltimore County, three persons were in the car. Pringle was the front-seat passenger. $763 in cash was recovered from the closed glove compartment. Five glassine baggies of cocaine were recovered from between the back-seat armrest and the back seat. All three men denied any knowledge of either the cocaine or the cash. Pringle was nonetheless convicted of the possession of cocaine with the intent to distribute. The Maryland Court of Special Appeals affirmed the conviction. Pringle v. State, 141 Md. App. 292, 785 A.2d 790 (2001). The Maryland Court of Appeals, however, reversed the Court of Special Appeals, Pringle v. State, 370 Md. 525, 805 A.2d 1016 (2002), holding that absent specific facts tending to show Pringle's knowledge and dominion or control over the drugs, "the mere finding of cocaine in the back armrest when [Pringle] was a front seat passenger in a car driven by its owner [was] insufficient to establish probable cause for an arrest for possession." 370 Md. at 545. The Supreme Court, in its turn, reversed the Court of Appeals and reinstated the conviction. It concluded that it was reasonable to infer that all three occupants of the car had knowledge of the cocaine that was in the car.

> "We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly."

540 U.S. at 372. (Emphasis supplied). Chief Justice Rehnquist's opinion for the Court explained the rationale underlying the inference of a common purpose or enterprise.

> "Pringle and his two companions were in a relatively small automobile, not a public tavern. In <u>Wyoming v. Houghton</u>, we noted that '<u>a car passenger</u> – unlike the unwitting tavern patron in <u>Ybarra</u> – <u>will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing.</u>' Here we think <u>it was reasonable for the officer to infer a common enterprise among the three men.</u> The quantity of drugs and cash in the car indicated the likelihood of <u>drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.</u>"

540 U.S. at 373. (Emphasis supplied; citations omitted). See also <u>State v. Suddith</u>, 379 Md. 425, 443, 842 A.2d 716 (2004) ("The Supreme Court [in <u>Maryland v. Pringle</u>] clearly noted that <u>car occupants are likely to be involved in a common enterprise</u>."). (Emphasis supplied).

### Maryland Follows Suit

<u>Larocca v. State</u>, 164 Md. App. 460, 883 A.2d 986 (2005), was an en banc decision of this Court decided by an 8-4 vote. Larocca, one of three occupants of a car that was stopped and searched, was the front seat passenger. There was evidence that both the driver and the back seat passenger had smoked marijuana but no direct evidence that Larocca had done so. There was only a permitted inference in that regard. The smoking by the other two had been done in the appellant's presence. Larocca challenged the sufficiency of the evidence to show that he was guilty of unlawful possession.

> "The appellant contends the evidence was legally insufficient to support his conviction of possession of marijuana with intent to distribute. <u>His complaint focuses on the possession element of the crime. He argues that there was not a 'scintilla of evidence that he was even aware of the existence of the [marijuana],</u> and the driver/owner of the car freely admitted that in fact he was the owner of the drugs.' <u>He maintains that the evidence at most showed 'proximity [on his part] to concealed drugs,' which standing alone cannot support a finding of knowledge of the presence and the nature of the</u>

- 17 -

contraband. <u>He emphasizes that the marijuana was in an opaque bag that he could not see from his vantage point as a front seat passenger, because it was tucked under his seat</u>. He also stresses that there was no evidence that he had a possessory interest or right in the Honda."

164 Md. App. at 471. (Emphasis supplied).

In holding that the evidence was legally sufficient to establish possession by Larocca, Judge Deborah Eyler's opinion for the majority stressed the fourth <u>Folk</u> factor of being inferentially involved in a common enterprise.

"Also of critical importance here, <u>the evidence permitted an inference that the appellant was engaged in the mutual use and enjoyment of marijuana</u> (the fourth <u>Folk</u> factor) <u>and that the three occupants of the car were engaged in a marijuana-focused common enterprise</u>. There was direct evidence that marijuana was being smoked in a communal fashion in the passenger compartment of the small vehicle, with the windows rolled up."

164 Md. App. at 479. (Emphasis supplied).

Relying significantly on the Supreme Court's opinion in <u>Maryland v. Pringle</u>, our opinion pointed out that although <u>Pringle</u> was analyzing evidence of possession in the context of finding probable cause, the analysis was, as it was in this case, equally pertinent in the context of finding guilt or innocence.

"<u>Although the Pringle case addresses probable cause, it nevertheless establishes generally the reasonableness, and hence permissibility, of an inference that people who know each other and are traveling in a car in circumstances indicating drug using or selling activity are operating together, and thus are sharing knowledge of the essentials of their operation</u>."

164 Md. App. at 481. (Emphasis supplied).

- 18 -

This Court applied the <u>Pringle</u> rationale supporting the permitted inference of a common enterprise among passengers in an automobile.

> "<u>The Pringle Court observed that automobile passengers 'will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing</u>.' The Court explained that it was 'entirely reasonable' for the arresting officer in <u>Pringle</u> to believe <u>that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine found behind the armrest</u>."

*Id.* (Emphasis supplied, citations omitted).

Such an inference would have been permissible in this case as well. The jurors would have been permitted to draw the inference of a mutual enterprise even though they would not have been compelled to do so. Accordingly, it became, by definition, a key component of that version of the evidence most favorable to the State. Of significance is the fact that whereas the common enterprise in <u>Maryland v. Pringle</u> was commercial in nature, the common enterprise in <u>Larocca v. State</u> was recreational, as it most likely was in this case.

### What Evidence Do We Measure And When Do We Measure It?

The appellant's entire argument as to evidentiary insufficiency hinges on his mistaken understanding of how appellate courts deal with circumstantial evidence when measuring the legal sufficiency of the State's proof of guilt. The appellant relies on <u>Handy v. State,</u> 175 Md. App. 538, 562-63, 903 A.2d 1111 (2007), on the adequacy of circumstantial evidence, but he misapplies the words of <u>Handy</u> to the measurement of the wrong evidence at the

wrong time. It is, however, an understandable mistake and a mistake that is commonly made by others. Quoting from <u>Handy</u>, the appellant argues:

> "'Circumstantial evidence alone is "sufficient to support a conviction, provided the circumstances support rational inferences from which a trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused."' <u>Handy</u>, 175 Md. App. at 562. However, '<u>a conviction upon circumstantial evidence alone will not be sustained unless the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence</u>.' <u>Handy</u>, 175 Md. App. at 562. Here, the Appellant asserts that the evidence against him was completely circumstantial and that there was a reasonable hypothesis that the driver ejected the CDS from the vehicle."

Appellant's Brief at 5-6. (Emphasis supplied).

<u>Handy's</u> quite proper admonition that a final case based "upon circumstantial evidence alone" should not be permitted to go to the jury where the totality of the evidence was both circumstantial and also susceptible of an innocent explanation is a standard that is applied at the end of the entire case when the trial judge must determine, assuming the appropriate motion for acquittal has been made, whether the State's case is legally sufficient to go to the jury.

That is not a threshold requirement, however, for the very drawing of every constituent inference in the first instance. A guilty inference may be drawn even from predicate circumstances that could give rise just as well to an innocent inference. That is always the case with a package of permitted inferences. This antecedent or procedural trial process of drawing permitted inferences is not remotely what the <u>Handy</u> admonition was talking about. The appellant is misapplying the <u>Handy</u> principle to the antecedent drawing

- 20 -

of an inference rather than to the ultimate assessment of the State's burden of production.

The analogy is not apt. The appellant argues:

> "The Appellant was convicted based on an inference that because it is more likely that a passenger ejected objects containing CDS from the passenger side window, the passenger must have ejected the CDS from the Jeep. Handy teaches us that such an inference is impermissible to establish guilt beyond a reasonable doubt. Indeed, the driver of the Jeep could have ejected the objects from the passenger side window just as easily as the passenger. A reasonable inference may be drawn that one or both of the occupants ejected objects from the jeep. However, based on facts presented by the State, it is impossible to say that the passenger ejected the objects from the Jeep versus whether the driver ejected the objects from the Jeep versus whether both the driver and the passenger ejected objects from the Jeep. Without more, the State's evidence forces a trier of fact to speculate on who actually ejected the objects from the passenger side window. Based on the tenets of Handy, when a 'reasonable hypothesis of innocence' exists in a purely circumstantial case, the Appellant's conviction cannot stand."

Appellant's Brief at 7. (Emphasis supplied). The appellant is confusing the drawing of an inference in the course of a trial with the returning of a verdict of conviction at the end of the trial. What must be true of the totality is not true of each and every item that goes into the totality.

The appellant is misapplying the Handy admonition in microcosm to each and every particular drawing of an inference. There is nothing in Handy that prohibits the drawing of the inference that the appellant threw the contraband out of the passenger window, as we have thoroughly analyzed and held. The permitted inference that may be drawn, moreover, then becomes an integral part of the larger version of the evidence most favorable to the State's case. The State's case that would have been subject to the Handy admonition had it

been based on circumstantial evidence alone (it was not)[3] included a number of permitted inferences. It included the permitted inference that the appellant had seen and had knowledge of the presence of the drugs in the car. It included the permitted inference that the appellant and Ramos were engaged in a common enterprise or recreational activity. It permitted the inference that in the course of the flight from the police the appellant threw the contraband out the window.

When the State's case came to be ultimately measured in terms of its burden of production, all of these permitted inferences were a part of the State's case. The appellant seems to operate upon the mistaken assumption that the State's case should be measured with all of these permitted inferences first subtracted from it rather than being included as a part of it. The appellant is obviously trying to apply the Handy admonition to each possible drawing of each individual inference. He argues in his reply brief:

> "[N]o evidence adduced at trial and certainly <u>nothing asserted by the State in its response brief would make the hypothesis that the driver ejected the CDS from the passenger side window unreasonable. With such a 'reasonable hypothesis of innocence,' according to Handy, the Appellant's conviction cannot stand</u>."

(Emphasis supplied).

---

[3]The observation of the appellant and Ramos in the Jeep drinking beer, the unexplained flight from the approaching policeman, the disgorging of items from the passenger window in the course of the chase, and the chemical analysis of the recovered drugs were all parts of the direct evidence and were not circumstantial evidence. The <u>Handy</u> limitation, therefore, would not apply in any event.

- 22 -

The fact that one may not ultimately return a verdict of guilty on a body of exclusively circumstantial evidence that is compatible with an innocent explanation by no means implies that one may not in the course of the trial draw an incriminating inference from a predicate that could also give rise to an exculpatory inference. The two phenomena are absolutely distinct. There is no analogy between them. The appellant, nonetheless, has "mushed" together two distinct applications into an awkward and inept amalgam.

Many an inculpatory inference is permitted notwithstanding the fact that an exculpatory inference was just as likely and would also have been permitted. The <u>Handy</u> inhibition simply does not apply to the drawing of inferences. As Judge Battaglia observed in <u>State v. Mayers</u>, 417 Md. 449, 10 A.3d 782 (2010):

> "<u>We defer to any possible reasonable inferences the jury could have drawn from the admitted evidence and need not decide whether the jury could have drawn other inferences</u> from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence."

(Emphasis supplied, citations omitted).

## How To Treat A Permitted Inference
## Once It Has Been Drawn

The law subjects permitted inferences to a rigorous testing process before permitting them to be drawn and thereby received in evidence. It scrutinizes the predicate facts closely to insure the competency of the permissibly inferred fact. Once the threshold determination has been made, however, that a certain inference will be permitted and once the factfinder has, indeed, drawn such a permitted inference, the fact inferred is thenceforth measured or

weighed as solid fact. The inference, once qualified, is not an evidentiary second-class citizen. It is just as legitimate an item of ultimate evidence as if it had been the product of eyewitness observation or a piece of physical evidence or of documentary evidence. Once it has qualified, we do not continue to question it or to devalue its evidentiary pedigree.

Once the trial moves on, moreover, from the threshold of evidentiary admissibility to testing the satisfaction of the burden of production, an inferred fact is simply a fact like any other fact. In testing the legal sufficiency of the evidence in a criminal case, we take that version of the evidence most favorable to the State and assume for all of its constituent elements, regardless of their evidentiary origins, maximum credibility and maximum weight. As a matter of persuasion, factfinders may assign different pieces of evidence different weights, but a reviewing court does not do so when assessing the burden of production, as a matter of law. At the end of the case and with respect to the burden of production, the exculpatory inferences do not exist. They are not a part of that version of the evidence most favorable to the State's case.[4]

We do not endlessly revisit such anterior questions as competency or admissibility once we have moved on to the distinct task of assessing legal sufficiency. One of the more difficult aspects of appellate review is that of keeping the considerations of distinct, albeit

---

[4]As far as the issue of persuasion is concerned, the exculpatory inferences are still in the case, as a matter of fact, and may, of course, be drawn by the factfinder. It is with respect to the very different issue of production, as a matter of law, that they are no longer in the case. They are not a part of the particular totality that we are called upon to measure when it comes to assessing legal sufficiency.

related, issues from leaking into each other. In this case, we have been coping not with leakage of the <u>Handy</u> admonition, but with profligate splashing of it from the burden of production compartment back into the initial admissibility of evidence compartment. Inferring a constituent fact is not the same as inferring ultimate guilt and these two situations are simply not comparable.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**